**Roger GAGNON, Plaintiff, Appellant,**

v.

**SECRETARY OF HEALTH AND HU-MAN SERVICES, Defendant, Appellee.**

No. 81–1187.

United States Court of Appeals, First Circuit.

Submitted Sept. 18, 1981.

Decided Dec. 4, 1981.

David B. Green, Providence, R. I., on brief for plaintiff, appellant.

Paul F. Murray, U. S. Atty. and Everett C. Sammartino, Asst. U. S. Atty., Providence, R. I., on brief for defendant, appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Roger Gagnon appeals from a decision of the district court finding substantial evidence to support the Secretary's determination that Gagnon is not disabled from engaging in all substantial gainful activity. Specifically, Gagnon claims that the Secretary misapplied the regulations governing disability, including the Medical-Vocational Guidelines[1] used in determining whether jobs exist in the national economy for claimants of various proven strength abilities. Because we find that the administrative law judge (ALJ) misapplied the Secretary's new Medical-Vocational Guidelines in his decision, we vacate the Secretary's determination and remand to the Secretary for further proceedings and findings.

Roger Gagnon, who was born in 1926, suffered amputation of his right leg, below the knee, after a train accident when he was two years old. Through the use of a prosthesis, Gagnon was able to stand and walk adequately for most of his life. Although he earned a college degree in pharmacy, he never worked in this field. Instead, he spent some 21 years in the construction industry as a member of a team of workers operating a pile driver, equipment used to place the foundations of large buildings. Gagnon testified at the administrative hearing that, while this was "very heavy" and "exceedingly dangerous" work involving the lifting of heavy weights, he was able to sit frequently while the machines were in operation. For this reason and because he "was brought up ... in the construction business," he found this work easier than pharmacy, in which "I was on my leg constantly."

In September 1978 at the age of 52, Gagnon applied for disability benefits. He complained that he was unable to return to his construction job or to do any other work because his amputated leg was infected and because he found it difficult to use his prosthesis. He further claimed that he was prevented from working because of back pain caused by uneven postural development, a side effect of amputation at an early age; by fainting spells caused by a diabetic condition; and by various environmental sensitivities. The very fact that he had only one leg further limited the number of jobs he might be able to do, given his other disabilities. After an initial denial of the application, a hearing was held before an administrative law judge. Gagnon, the only witness, appeared with a paralegal representative and testified regarding his work history, his daily activities, and his current difficulties. Gagnon stated that he was in constant pain, that he wore his prosthesis as little as possible, and that he could not carry any weight while walking. How-

---

1. These Guidelines, 20 C.F.R. § 404, Subpart P, App. 2 (1981), contain rules whereby the Secretary has taken administrative notice of jobs existing in the national economy for persons of various ages, educational backgrounds, prior work histories, and strength limitations. Where a claimant's vocational profile matches exactly with the factors of a given rule, the rule itself directs a result of "disabled" or "not disabled." These regulations, while the subject of much litigation recently, have been approved in this circuit as a valid exercise of the Secretary's statutory authority in appropriate cases. *Geoffroy v. Secretary of HHS,* 663 F.2d 315, at 317 (1st Cir. 1981).

ever, he also indicated that he could walk up to one-half mile and stand for up to two hours at a time. Besides Gagnon's testimony, the record before the ALJ consisted of written reports from three physicians, Drs. Lury, Pike, and Cinquegrana.

In his opinion, the ALJ followed the sequential analysis required by Social Security regulations, 20 C.F.R. § 404.1503, and concluded that Gagnon was not currently working; that he suffered from a severe impairment; but that his impairment was not among or equal to those listed in Appendix 1 to Subpart P of section 404.[2] Furthermore, the ALJ found that although Gagnon's impairment did prevent him from engaging in his past work, Gagnon retained the "residual functional capacity to engage in employment of a light exertional level."[3] The ALJ made no finding, however, on the effect, if any, of Gagnon's additional complaints including his postural complications, his pain, his environmental restrictions, and his lack of agility due to the fact that he was missing a leg. Such restrictions are referred to in the Secretary's regulations as "nonexertional" factors and may, in a given case, limit the number of jobs for which an individual might qualify.[4] In reaching his ultimate conclusion that Gagnon was not disabled, the ALJ simply applied Rule 202.-13 of Appendix 2 to Subpart P, which automatically dictates a finding of "not disabled" for a person with Gagnon's age, education, work experience and adaptability who retains the capacity to do the full range of jobs requiring light work skills.

On appeal, Gagnon raises three objections to the ALJ's analysis. First, he argues that his impairment is among those listed in Appendix 1 to Subpart P, requiring a finding of disability as compelled under 20 C.F.R. § 404.1503(d). He cites in particular Rule 1.10(c)(3), which lists as one such impairment "amputation of one lower extremity along with inability to use a prosthesis effectively without obligatory assistive devices" due to "stump complications persistent." Second, Gagnon argues that Rule 202.13 does not compel an automatic finding of no disability in his case because he cannot perform the *full range* of light work due to his "nonexertional" limitations (see above). Gagnon's third claim is that the ALJ failed to take adequate account of his claims of pain, particularly pain in his back.

We find no merit in either the first or the third of Gagnon's claims. Rule 1.10(c)(3) would apply only if Gagnon lacked ability to use a prosthesis "effectively." While the ALJ did not address this claim directly, it is clear from his opinion that he found Gagnon able adequately to use a prosthesis. There is substantial evidence to support such a finding. As the ALJ noted, Gagnon wore a prosthesis every day for many years, and just prior to the hearing, Dr. Lury reported that Gagnon could stand for up to four hours a day. Dr. Cinquegrana termed Gagnon's use of his prosthesis "satisfactory" and indicated that a new type of prosthesis might be still better. Moreover, Gagnon himself reported that he could stand for up to two hours and walk half a mile. Reviewing on a substantial evidence standard, as we must under 42 U.S.C. § 405(g), we find no error in the Secretary's evident conclusion that Gagnon could effectively use a prosthesis.

Nor do we find error in the ALJ's evaluation of Gagnon's claims of pain. Although the ALJ did not address these claims separately, they are acknowledged and considered throughout his opinion. In-

---

**2.** These regulations provide that a claimant may automatically qualify for disability without respect to the existence or not of jobs in the national economy. 20 C.F.R. § 404, Subpart P, App. 1.

**3.** 20 C.F.R. § 404.1510(c) defines the exertional capacity to do light work as follows:

(c) *Light work.* Light work entails lifting 20 pounds maximum with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be only a negligible amount, a job is in this category when it requires walking or standing to a significant degree, or when it involves sitting most of the time with a degree of pushing and pulling of arm or leg controls.

**4.** *See* 20 C.F.R. § 404, Subpart P, App. 2, Rule 200.00(e).

deed, the ALJ's conclusion that Gagnon cannot return to his past work appears to rest largely on Gagnon's report of low back pain, along with the three physicians' findings of varying degrees of back trouble. While pain may be disabling in a particular case, *Miranda v. Secretary*, 514 F.2d 996 (1st Cir. 1975), the actual degree of a claimant's pain is for the Secretary to evaluate in the light of the supporting medical evidence. We think there is adequate support for the ALJ's implicit finding that Gagnon's pain does not, in and of itself, disable him.

Gagnon's second claim, however, that the ALJ misapplied the Medical-Vocational Guidelines by failing to make an explicit finding respecting Gagnon's "nonexertional" limitations, has merit, and we accordingly remand for proper application of the Secretary's regulations. While the ALJ supportably found that Gagnon retained the strength capacity to do "light work,"[5] he took no explicit account of Gagnon's non-strength limitations. Section 200.00(e) of Appendix 2 to Subpart P, 20 C.F.R. § 404, however, requires such consideration before the Guidelines may be fully applied. This regulation states in part that,

(e) Since the rules are predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs, they may not be fully applicable where the nature of an individual's impairment does not result in such limitations, e.g., certain mental, sensory, or skin impairments. In addition, some impairments may result solely in postural and manipulative limitations or environmental restrictions. Environmental restrictions are those restrictions which result in inability to tolerate some physical feature(s) of work settings that occur in certain industries or types of work, e.g., an inability to tolerate dust or fumes.

Thus, the regulations recognize that the rules in the Medical-Vocational Guidelines "may not be fully applicable" where limitations in lieu of strength impairments are asserted.[6] Moreover, section 200.00(e)(2) specifically sets forth the procedure the ALJ is to follow when *both* exertional and nonexertional factors are present, as they were in Gagnon's case. As the regulations state,

(2) . . . where an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of *how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.* Also, in these combinations of nonexertional and exertional limitations which cannot be wholly determined under the rules in this Appendix 2, *full consideration must be given to all of the relevant facts* in the case in accordance with the definitions and discussions of each factor in §§ 404.1505–404.1511, which will provide insight into the adjudicative weights to be accorded each factor. (Emphasis added.)

---

5. The record reveals that Gagnon could occasionally lift and carry up to 20 pounds. He could also stand and walk up to four hours in an eight-hour work day and had the full use of three out of his four limbs. These facts show that Gagnon satisfied at least the minimal strength requirements outlined in the definition of "light work." 20 C.F.R. § 404.1510(c). *See* note 3, *supra*.

6. The rationale for this exception to the full, automatic application of the Medical-Vocational Guidelines appears to be simple. The Guidelines apparently assume that the sole limitation on a claimant's ability to seek jobs in the national economy is lack of strength, given the claimant's age, education, and prior work experience. Where a claimant has non-strength limitations, therefore, the Guidelines do not accurately reflect what jobs would or would not be available. In cases where non-strength limits are found, therefore, the Secretary must carry his burden of proving the availability of jobs in the national economy by other means. *See* note 9, *infra*.

The ALJ in Gagnon's case clearly failed to follow this step-by-step process and made no finding as to whether or by how much Gagnon's "work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations."[7] Gagnon produced evidence that he must avoid moving machinery, marked temperature and humidity changes, and dust, fumes and gases. Gagnon also demonstrated evidence of fainting spells, pain,[8] and significant postural/manipulative disabilities which were the nonexertional side effects of his missing leg. All of these factors could well limit the number of jobs within the "light work" category which Gagnon might be able to perform, including such jobs as truck driving, janitorial work, messenger jobs, light factory work, etc.

The Secretary's decision must accordingly be vacated and the case remanded to the Secretary. On remand, the Secretary should determine, after such proceedings as may be suitable, whether Gagnon's nonexertional disabilities are significant enough to limit his access to the full range of jobs assumed to require "light work" strength capabilities. If he finds that the nonexertional factors do limit Gagnon's ability to do some "light work" jobs, then he must give "full consideration" to "all the relevant facts," including the taking of expert vocational testimony if necessary,[9] before concluding that Gagnon is either "disabled" or "not disabled."[10]

*The judgment of the district court is vacated. The district court is directed to enter a judgment vacating the Secretary's determination and remanding for further agency proceedings in accordance herewith.*

---

7. This court recently encountered a case where an ALJ properly considered such factors. In that case the ALJ made a specific finding that "claimant's impairment is solely exertional." *See Fogg v. Secretary of HHS,* No. 81–1232, slip op. (1st Cir. Oct. 13, 1981). We upheld this finding as supported by substantial evidence.

8. Pain may be a nonexertional factor to be considered in combination with exertional limitations as well as a separate and independent ground for disability. Where pain is considered as a separate ground for disability, of course, it must be severe enough to prevent the claimant from engaging in *any* substantial gainful employment. Where pain is considered in combination with exertional limitations, however, it need only be found significant enough to prevent the claimant from engaging in the full range of jobs contemplated by the exertional category for which the claimant otherwise qualifies.

9. This court has held that the Secretary carries the burden of showing that jobs exist in the national economy which could be performed by a claimant who is unable to carry on his previous work. *E.g., Hernandez v. Weinberger,* 493 F.2d 1120 (1st Cir. 1974). Where the Tables of the Medical-Vocational Guidelines do not apply in a given case, it is likely that the testimony of a vocational expert will typically be required, as it was before these regulations took effect.

10. We understand that during the pendency of this appeal, Gagnon reapplied for and received disability benefits as of June 1980. The only issue on remand, therefore, is whether those payments should have begun as of his original filing date. Our present opinion and judgment in no way affect or reopen Gagnon's current status as a recipient as of June 1980.