Vincent LOMBARDO, Plaintiff,

v.

Richard SCHWEIKER, Secretary of Health and Human Services, Defendant.

No. 81 C 4838.

United States District Court, N. D. Illinois, E. D.

Sept. 16, 1982.

*Company Institute v. Federal Reserve System,* 551 F.2d 1270, 1280 (D.C. Cir. 1977).

876

Deborah Spector, Chicago, Ill., for plaintiff.

Dan K. Webb, U.S. Atty. by Edward J. Moran, Asst. U.S. Atty., Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

This is an action for judicial review of a final decision of the Secretary of the Department of Health and Human Services, denying the plaintiff's application for Supplemental Security Income (SSI) under Section 1602 of the Social Security Act. 42 U.S.C. § 1381a.

The plaintiff filed an application for SSI benefits on December 17, 1979. In a hearing conducted on October 14, 1980, the Administrative Law Judge (ALJ) determined that the plaintiff was not entitled to SSI based on disability. The ALJ concluded that the evidence indicated the plaintiff's impairments would not prevent him from engaging in sedentary work, which is done primarily in the seated position. Based on this conclusion, the ALJ found plaintiff not disabled, citing Rule 201.24 of the medical vocational guidelines, 20 C.F.R. Subpart P, Appendix 2, Rule 201.24.

A review of the record discloses that the plaintiff was 40 years old at the time of his application for SSI benefits, and has a grammar school education. Divorced, and with no dependent children, the plaintiff presently resides in a basement apartment of the building in which his mother and sister also reside.

In approximately 1962, the plaintiff sustained an injury to his spine. Since the time of the injury, he has only been employed for a period of four months in 1964 as a service station attendant. From February, 1979 until December, 1979, the plaintiff was incarcerated in a federal correctional institution for committing mail fraud. Upon his release, he filed his application for SSI benefits.

At his hearing, the plaintiff testified that he suffers headaches two to three times weekly, and experiences pain in both legs and both heels due to a back injury. At this time, it was further noted that the plaintiff takes aspirin for his headaches and is under no medication for his back ailment.

The medical evidence is extensive. A physician's report of January 15, 1980, diagnosed the plaintiff as having post-laminectomy syndrome. Based on a review of this report, and not an actual examination of the plaintiff, a State agency physician concluded in his report of January 22, 1980, that the plaintiff could perform medium work.

From April 9, 1980 until April 11, 1980, the plaintiff was admitted to a hospital for treatment of various complaints. He was found to be hyperthyroid, which was diagnosed as Hashimoto's thyroiditis. This condition resulted in a rapid weight gain. CAT scans taken indicated the plaintiff had mild lumbosacral stenosis, as well as a hyperdense area that possibly was harboring an anterior communicating artery aneurysm. However, subsequent anteriograms negated that possibility. Dr. Bernard Lerner, who prepared the hospital's medical report, added that the plaintiff's general health appeared to be "in fairly good status."

A psychiatric examination on May 1, 1980 found that the plaintiff was well oriented and that his thinking and mood were within normal limits. The plaintiff's functional capacity was perceived normal despite the existence of pychogenic impotence and inadequate personality. It was noted that there are some limitations on the plaintiff's ability to socialize with co-workers and supervisory personnel, as well as a questionable ability to tolerate work pressures commonly associated with unskilled work. Another evaluation prepared by a clinical psychologist on September 24, 1980, painted a bleaker picture of plaintiff's psychological state and was submitted into evidence after the hearing. The evaluation suggested that the plaintiff's preoccupation with his pain and body was of such severity as to prevent him from attending to almost anything else in terms of his day-to-day functioning.

On review of the Secretary's finding, this Court is not to determine the merits of plaintiff's claim. Rather, the Court's function is merely to determine whether the ALJ's decision was based on substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Facts determined by the Secretary are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).

To qualify for SSI benefits on the basis of disability under 42 U.S.C. § 1381a, an applicant must be found to be a "disabled individual" as defined in the Act. The term "disabled individual" is defined, in pertinent part, in 42 U.S.C. § 1382c(a) as follows:

(1) For purposes of this title, the term "... disabled individual: means an individual who—

(A) ... is disabled (as determined under paragraph (3)), and ...

(3)(A) An individual shall be considered to be disabled for purposes of this title if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...

(B) For purposes ·of Subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

(C) For purposes of this paragraph, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

In the present case, the plaintiff alleged that he has both physical (exertional) and psychological (non-exertional) limitations that result in his being disabled within the meaning of the Social Security Act. The appropriate procedure in such a case is defined by 20 C.F.R. 404, Subpart P, Appendix 2, § 200(e)(2). That rule provides in pertinent part that,

... [W]here an individual has an impairment, or combination of impairments resulting in both strength limitations and non-exertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a

framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the non-exertional limitations. Also in these combinations of non-exertional and exertional limitations which cannot be wholly determined under the rules in this Appendix 2, full consideration must be given to all of the relevant facts in the case...

In accordance with this regulation, the ALJ first considered plaintiff's exertional limitations alone and concluded that they do not render plaintiff a "disabled individual" entitled to SSI benefits. This Court believes that the ALJ was presented with substantial evidence to support his conclusion. While there appears to be some evidence of pain and loss of mobility, the evidence indicates that these physical handicaps are not of such a severe degree as to label the plaintiff incapable of sedentary work. For example, despite evidence that plaintiff has been diagnosed as suffering from mild lumbosacral stenosis and a possible aneurysm, the medical report of November 7, 1980 indicates that the results of an angiogram and EEG were normal. Myelograms have also been normal, indicating that there are no herniated discs. In addition, plaintiff's anteriograms are significant, as they reveal that no abnormal density or aneurysm existed at the time of testing. The ALJ was presented with evidence indicating that the seizures for which plaintiff has received no medication, do not result in a loss of consciousness and are not epileptic in nature, and the evidence also showed that plaintiff's headaches are treated by plain aspirin. In fact, plaintiff testified that his headaches are not of primary concern.

In light of this evidence, the Court must agree with the ALJ's reluctance to accept the plaintiff's subjective complaints of "severe pain." In order to receive benefits, the plaintiff must demonstrate more than a bare contention of disabling pain. 20 C.F.R. § 416.928(a); *Moon v. Celebrezze,* 340 F.2d 926 (7th Cir. 1965). As the ALJ reasonably noted, it is difficult to fully accept the plaintiff's contention of severe pain when it is realized that the plaintiff is not taking any prescription or over-the-counter medication for his back pain.

Once the ALJ determined that plaintiff was not disabled on the basis of his exertional limitations, he next moved to a separate consideration of whether non-exertional limitations affect plaintiff's residual capacity for sedentary work. The ALJ concluded that they did not. This Court believes that the ALJ followed the appropriate regulation in reaching his conclusion; however, it feels that the ALJ's finding was not based on substantial evidence and therefore must be reversed.

■ With regard to the guidelines employed by the ALJ, this Court believes that the ALJ's method of analysis comported with the law. The applicable regulation governing the ALJ's analysis of this case is 20 C.F.R. 404, Subpart P, Appendix 2, § 200(e)(2), *see* pp. 4–5, *supra.* The rule clearly requires that an individual suffering from a combination of exertional and non-exertional limitations is initially treated as suffering only from the exertional limitation. This was done by the ALJ. The Court believes that, despite plaintiff's argument to the contrary, it was appropriate for the ALJ to apply the medical-vocational guidelines in his first-step determination of whether the applicant is physically disabled. *Gagnon v. Secretary of Health and Human Services,* 666 F.2d 662, 665 (1st Cir. 1981).

■ The ALJ then moved to the second step of the analysis required by the rule, i.e., a separate determination of whether the plaintiff's non-exertional limitations further diminish the plaintiff's ability to perform so as to require a finding of disability. The ALJ is to give "full consideration ... to all of the relevant facts" and, on the basis of this consideration, determine whether the non-exertional problems require a different finding than that required by the first step of his analysis. *Id.* at 665–666. This Court believes that the ALJ analyzed the plaintiff's non-exertional limitations and concluded that his initial determination should remain unchanged. *See*

ALJ Opinion at 24–25. The ALJ's analysis indicates that he did not simply follow the applicable medical-vocational guideline employed in the first step of his analysis, but rather re-evaluated the threshold determination against the additional psychological problems presented by plaintiff's case. *See Torres v. Secretary of Health and Human Services,* 668 F.2d 67, 69–70 (1st Cir. 1981).

Despite the fact that this Court feels that the ALJ followed the correct procedure, it cannot find that the ALJ's ultimate conclusion was based on substantial evidence. In fact, virtually all of the evidence regarding plaintiff's non-exertional limitations points to the conclusion that the plaintiff's psychological condition combined with his exertional limitations render him "disabled" within the meaning of the act.

In his written opinion the ALJ noted that Dr. Arbit's report was to the effect that "the claimant was so fixed and preoccupied with his pain that he could not function in any way." ALJ Decision at 24. Presumably, the ALJ thought this report was sufficiently rebutted by the report of Dr. Choe which, according to the ALJ, indicated that plaintiff had "no significant psychological impairment," and was "capable of performing simple routine repetitive tasks, understanding, retaining and carrying out simple instructions, [and] managing his own funds..." *Id.* The ALJ mentioned, but failed to place any emphasis on, the fact that Dr. Choe's report *also* included a finding that plaintiff "was preoccupied with certain bodily concerns and had psychogenic impotence." *Id.* Additionally, Dr. Choe found evidence of an "inadequate personality" and limitations on the plaintiff's "ability to socialize." *Id.* Finally, Dr. Choe's report indicated that the plaintiff's "ability to achieve production requirements and tolerate work pressures generally associated with unskilled work was questionable..." *Id.* These *very serious* qualifications on Dr. Choe's report of "no significant psychiatric impairment" leave this Court unable to imagine *any* substantial gainful work activity in which plaintiff could successfully participate. Dr. Choe's report and Dr. Arbit's report, when considered in conjunction with

plaintiff's physical limitations compel only one conclusion—plaintiff is completely incapable of successfully functioning in any conceivable working environment. For this reason, the Court concludes that the decision of the ALJ was not based on substantial evidence.

The ALJ's ruling is reversed and the Secretary of Health and Human Services is ordered to grant claimant Vincent Lombardo's application for Supplemental Security Income under Section 1602 of the Social Security Act. 42 U.S.C. § 1381a.

IT IS SO ORDERED.