Linn BOWKER, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

Civ. No. 84–0041–P.

United States District Court, D. Maine.

Nov. 1, 1984.

Michael A. Bell, Bell & Geores, Lewiston, Maine, for plaintiff.

Paula D. Silsby, Asst. U.S. Atty., Portland, Maine, for defendant.

## MEMORANDUM OF DECISION AND ORDER OF REMAND

GENE CARTER, District Judge.

### I.

This is an action brought under 42 U.S.C. § 405(g) and § 1383(c)(3) for review of the final decision of the Secretary of Health and Human Services, which denied Plaintiff's application for a period of disability and for disability insurance benefits under 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A). An Administrative Law Judge (ALJ) decided that Plaintiff was entitled to a period of disability and to disability insurance benefits as of November 1, 1979, due to epilepsy and diabetes. The Appeals Council reversed the ALJ's decision. Specifically, the Appeals Council found, contrary to the finding of the ALJ, that Plaintiff's impairment did not satisfy the criteria of Section 11.02(A) and (B) of the Listing of Impairments found in Appendix 1 to 20 C.F.R. Part 404. Plaintiff has filed a Motion for Summary Judgment, and Defendant has filed a Motion for Order Affirming the Decision of the Secretary. The case is before the Court on these motions.

The standard of this Court's review is whether the determination made ·by the Secretary is supported by substantial evidence. 42 U.S.C. § 405(g) and § 1383(c)(3); *Lizotte v. Secretary of Health and Human Services,* 654 F.2d 127, 128 (1st Cir. 1981). The determination must be supported by such relevant evidence as a reasonable·mind might accept as adequate to support the conclusions drawn. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

The Court has thoroughly reviewed the transcript of the administrative proceedings, the exhibits presented, the decisions of the ALJ and the Appeals Council, and the briefs of counsel. After careful consideration, the Court finds that there is not substantial evidence to support the Secre-

tary's decision that the claimant was not disabled within the meaning of the Social Security Act.

The regulations promulgated pursuant to the Social Security Act serve the beneficent purpose of promoting consistency and objectivity in administrative review of disability claims. They represent an ambitious effort to provide a specific rule of decision for each of a multiplicity of foreseeable impairments and combinations thereof. Not every claim, however, fits neatly into the framework of the regulations, and a claimant occasionally is prejudiced by the Secretary's effort to squeeze a square peg into a round hole. This is such a case.

Plaintiff suffers from two serious illnesses, epilepsy and diabetes. Currently 30 years old, he takes high dosages of Dilantin and Phenobarbital to control the epilepsy, and insulin to control the diabetes. He also has a history of depression that includes an apparent suicide attempt in July 1983.

The ALJ heard the testimony of Plaintiff, his wife, and Medical Advisor Albert Aranson, M.D. The record also contains extensive medical records and two affidavits by Plaintiff's wife concerning the frequency and nature of Plaintiff's epileptic seizures.

The ALJ found that Plaintiff's epilepsy satisfied the criteria of Section 11.02(A) and (B) of the Listing of Impairments found in Appendix 1 to 20 C.F.R. Part 404, which provides:

11.02 Epilepsy—major motor seizures (grand mal or psychomotor), documented by EEG and by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month, in spite of at least 3 months of prescribed treatment. With:

A. Diurnal episodes (loss of consciousness and convulsive seizures); or

B. Nocturnal episodes manifesting residuals which interfere significantly with activities during the day.

The ALJ accordingly found him to be disabled without considering his age, educa-

tion and work experience pursuant to 20 C.F.R. § 404.1520(d).

The Appeals Council reviewed the ALJ's decision on its own motion. *See* 20 C.F.R. § 404.969. The Council found that Plaintiff's allegations as to the frequency of his seizures were not credible or substantiated by the medical evidence. Record at 20. It found the medical evidence to be in conflict with Plaintiff's allegations and the statements in the affidavits. *Id.*

The Appeals Council further found that Plaintiff had a residual functional capacity for light work as defined in 20 C.F.R. § 404.1567. *Id.* It found that the level of work Plaintiff could perform was not significantly affected by Plaintiff's non-exertional limitations. *Id.* The Council then relied upon the Medical-Vocational Guidelines, set forth in Appendix 2 to 20 C.F.R. Part 404, Rule 202.17, to determine that Plaintiff is not disabled.

■ The Appeals Council is not bound by the findings of the ALJ. The Council is free to independently weigh the evidence and arrive at its own findings and conclusions. *Oldham v. Secretary of Health and Human Services*, 718 F.2d 507, 510 (1st Cir.1983). This Court must determine whether the final decision of the Secretary—in this case, the decision of the Appeals Council—is supported by substantial evidence.

## II.

■ The first issue is whether the Appeals Council's finding that Plaintiff does not satisfy the criteria set forth in Section 11.02 of the Listing of Impairments is supported by substantial evidence. To satisfy the Listing, Plaintiff's seizures must occur "more frequently than once a month." The burden of proving the frequency of the seizures is placed upon the claimant. *See Reyes Robles v. Finch*, 409 F.2d 84, 86 (1st Cir.1969).

■ The Court finds that there is substantial evidence to support the Secretary's finding that Plaintiff failed to meet his

burden of proof with respect to the frequency of seizures prior to January 1, 1982. Plaintiff testified on October 19, 1982. His only specific testimony regarding the frequency of seizures between November 1, 1979, the alleged date of onset of disability, and January 1982 was as follows: "[A]t the beginning of the year [1982], I was working—before that, I wasn't working and I was having seizures, but I was having em about two or three a month." Record at 61. Neither his testimony nor that of his wife includes information concerning the duration of the period in which he was allegedly suffering "two or three a month."

Plaintiff's reports to his physicians, on the other hand, support the Secretary's conclusion regarding the frequency of seizures prior to 1982. On November 5, 1981, Plaintiff's treating physician, Brian McCann, M.D., stated that the claimant's "last reported seizure" had occurred more than a year ago. Record at 167. On May 14, 1981, Iain Sanderson, M.D., another treating physician, stated that Plaintiff "reported no seizures and myoclonic jerkings only once monthly." Record at 157. On August 11, 1981, Dr. Sanderson stated that Plaintiff had suffered no seizures since his visit in May. Record at 173. This represents substantial evidence to support the Secretary's finding regarding the frequency of seizures prior to 1982.

The record does not contain substantial evidence supporting the Secretary's findings regarding the frequency of seizures during the period beginning in January 1982 and ending with the close of evidence. The claimant testified that he had suffered more than one seizure a month in 1982. Record at 61–62. In an affidavit of May 16, 1983, the claimant's wife stated that seven seizures had occurred since October 19, 1982. Record at 261. In her affidavit of July 26, 1984, she stated that he had suffered a seizure on June 30 and one on July 2. Record at 264, 265.

Dr. Aranson, the Medical Advisor to the ALJ, testified that the claimant's seizures were occurring at least once a month.

Record at 91. Bernard Kopet, M.D., another examining physician, stated that the claimant told him on April 22, 1982, that seizures were occurring twice monthly. Record at 175.

The only evidence that could be said to conflict with the above evidence regarding the frequency of seizures is a report of Bruce Sigsbee, M.D., a treating physician. On June 16, 1982, Dr. Sigsbee stated that seizures were occurring every three weeks. Record at 183. On September 9, 1982, he stated that the claimant had suffered one seizure in two months. Record at 186. These reports do not conflict with the claimant's testimony. However, on April 19, 1983, Dr. Sigsbee stated in a letter to Plaintiff's counsel that "the last *recorded* seizure I have in reference to Mr. Linn Bowker is one that occurred in January." Record at 254 (emphasis added). On May 9, 1983, Dr. Sigsbee wrote the following letter to Plaintiff's counsel:

> Mr. Linn Bowker was in the office recently. He provides the history that he is having approximately one seizure a month, usually at night, though not exclusively restricted to night time. There is a reasonable medical probability that within six months, his seizures will completely be controlled with medication adjustment. *I have asked that he call with any further seizures. Unfortunately, he has not called between the visit in January and now* and we have lost time in terms of trying to get the seizures under control.

Record at 258 (emphasis added). This letter is ambiguous with regard to *when* Dr. Sigsbee asked Plaintiff to call "with any further seizures." The letters from Dr. Sigsbee constitute the *only* evidence upon which the Appeals Council could have based its conclusion that seizures were occurring less frequently than once a month at any time subsequent to January 1982. They indicate only that the claimant did not call Dr. Sigsbee to report any seizures from January to May of 1983. Dr. Sigsbee did not question the claimant's statement that he was having seizures approximately

once a month. The affidavit of claimant's wife tends to negate the inference that might be drawn from the fact that Plaintiff did not call Dr. Sigsbee from January to May of 1983. The Court concludes that the record does not contain substantial evidence to support the Secretary's conclusion that the claimant did not suffer seizures more than once monthly beginning in January 1982.

■ The Secretary argues that if the claimant failed to pursue his treatment regimen, he cannot be found to satisfy the criteria in the Listing of Impairments. *See* 20 C.F.R. § 404.1530. Two treating physicians, Dr. Sanderson and Dr. Sigsbee, speculated that poor seizure control may have resulted from the claimant's failure to regularly take his medication as prescribed. On August 11, 1981, Dr. Sanderson stated in an office note: "In the past, seizure control difficulties have been related more to irregular use of medication." Record at 172. On June 16, 1982, Dr. Sigsbee noted, "I am not sure everything possible has been done to provide complete control of these seizures . . . ." Record at 184. On July 1, 1982, Dr. Sigsbee noted that the levels of both Dilantin and Phenobarbital in his blood were "subtherapeutic." *Id.* On April 19, 1983, however, Dr. Sigsbee stated:

> I have no evidence that Mr. Bowker has, in any way, been noncompliant with his medications.
>
> . . . .
>
> From a medical standpoint, he metabolizes these medications quickly and needs a substantially larger dose than most individuals. Once he is on this higher dose, he should maintain an adequate therapeutic level and be protected against seizures.

Record at 254. Thus, Dr. Sigsbee, who has been the treating physician at least since January of 1982, was unable to conclude that the claimant was noncompliant with his prescribed treatment. Additionally, both the claimant and his wife testified that he had taken his medication as prescribed. Record at 60–61, 81–82. *See also* Affidavit of Debra Bowker, Record at 261. In light of Dr. Sigsbee's observation that Plaintiff requires an unusually high dosage of medications to control his seizures and the uncontradicted assertions of Plaintiff and his wife, any possible inference that Plaintiff has been noncompliant is not supported by substantial evidence.

Should it become apparent, as Dr. Sigsbee predicted, that proper doses of medication will effectively control Plaintiff's seizures, the Secretary may review the case and respond appropriately. However, in the absence of substantial evidence of noncompliance, Plaintiff's claim for disability benefits should not be jeopardized where it is apparent that his physicians have had difficulty ascertaining the therapeutic level of medication required for this individual.

### III.

■ Once the Appeals Council concluded that Plaintiff's impairment did not meet the Listings, it proceeded, as prescribed in the sequential analysis set forth in 20 C.F.R. § 404.1520, to evaluate Plaintiff's residual functional capacity, *id.*, § 404.1520(e), and his ability to do other work, *id.*, § 404.-1520(f). The Council's application of the regulations to the facts of this case was erroneous. Although Plaintiff suffers from diabetes and depression, the Appeals Council failed to make findings with respect to the effect of these impairments, in combination with the epilepsy, upon Plaintiff's residual functional capacity. The Appeals Council made the following pertinent findings:

4.  The claimant has the residual functional capacity to perform work-related functions except for work involving climbing, driving motor vehicles, operating or working around machinery or working at unprotected heights.

5.  The claimant is unable to perform his past relevant work.

6.  Considering the exertional limitations only, the claimant has the residual functional capacity for at least light work as defined in sections 404.1567 and 416.967.

7. The level of work the claimant can do in light of the exertional limitations is not significantly affected by the nonexertional limitations.

. . . .

11. Based on the claimant's exertional limitation only, section 404.1569 and 416.969 and Rule 202.17, Table No. 2 of Appendix 2, Subpart P, Regulations No. 4, direct a conclusion that the claimant, considering his residual functional capacity, age, education, and work experience, is not disabled.

12. The claimant's nonexertional limitations do not significantly affect his residual functional capacity for light work and, therefore, considering that capacity within the framework of the above rule, the claimant is not disabled.

Record at 20.

Paragraphs 6, 7, 11 and 12, each relating to "exertional" limitations, are somewhat puzzling because none of the impairments alleged in this case are "exertional" within the meaning of the regulations. Epilepsy is clearly a nonexertional impairment. *See* 20 C.F.R. § 404.1545(d). Depression is a mental disorder. Finally, the record does not indicate that Plaintiff's diabetes imposes strength limitations and that it is, therefore, an "exertional" impairment. Despite the absence of exertional limitations, the Appeals Council made a finding as to the extent of Plaintiff's exertional limitations. The Council used this finding to make a determination of nondisability under the Medical-Vocational Guidelines, 20 C.F.R. § 404.1569, and Appendix 2, Rule 202.17. The Secretary's regulations preclude the application of the Guidelines when an impairment is nonexertional. *See* 20 C.F.R. § 404.1569; Appendix 2, Rule 200(e); *Gagnon v. Secretary of Health and Human Services*, 666 F.2d 662 (1st Cir.1981); *Stewart v. Heckler*, 594 F.Supp. 590 (D.Me. 1984). The Secretary's reliance upon the Guidelines in this case was clearly misplaced.

The Appeals Council also made an explicit finding that the claimant's nonexertional impairments "do not significantly affect his residual functional capacity for light work." The making of this finding, however, does not vitiate the prejudicial effect of the Appeals Council's misguided application of the Medical-Vocational Guidelines. First, the application of the Guidelines reveals the Secretary's confusion about the proper characterization of Plaintiff's impairments as exertional or nonexertional. The Appeals Council never discussed which impairments it was classifying as exertional or nonexertional. Second, there is no assurance that the Secretary's incorrect application of the Guidelines did not unduly influence the Council's decision. *Torres v. Secretary of Health and Human Services*, 668 F.2d 67, 69 (1st Cir.1981).

The essential, compelling question in this case is the extent to which Plaintiff's various illnesses impair his ability to hold a job that exists in the national economy. *See* 20 C.F.R. §§ 404.1520(f), 404.1561. The Appeals Council lost sight of that question as it proceeded through the maze of regulations. The Secretary is required to "give full consideration to all relevant facts in accordance with the definitions and discussions under vocational considerations." 20 C.F.R. § 404.1569. *See* 20 C.F.R. §§ 404.1560–1568. There is no hint in the decision of the Appeals Council that such consideration was given. The case must be remanded for proper application of the regulations with respect to the period from November 1, 1979, to January 1, 1982.[1]

Accordingly, it is ORDERED:

(1) That the final decision of the Secretary is REVERSED, and it is ORDERED that the Plaintiff shall be awarded disability benefits and Social Security Insurance benefits commencing January 1, 1982;

(2) That the case is REMANDED to the Secretary for further consideration of

---

**1.** Because the Court has determined that Plaintiff met the criteria set forth in the Listing of

Impairments beginning January 1, 1982, no further consideration of that period is required.

Plaintiff's eligibility for benefits prior to January 1, 1982, in accordance with this Memorandum of Decision and Order of Remand.

So ORDERED.