**Robert WILLEY, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**Civ. No. 83–0189 P.**

United States District Court,
D. Maine.

April 23, 1985.

Michael Sayer, Sayer & Golden, Lisbon Falls, Me., for plaintiff.

Paula D. Silsby, Asst. U.S. Atty., Portland, Me., for defendant.

## MEMORANDUM OF DECISION

GENE CARTER, District Judge.

This is an action under 42 U.S.C. § 405(g) for review of the final decision of the Secretary of Health and Human Services, which denied Plaintiff's application for disability insurance benefits. Plaintiff is a 55-year-old man who alleges that he became disabled on April 15, 1976 as a result of a variety of impairments. Plaintiff's application was denied administratively, and after hearing, by an Administrative Law Judge (ALJ). The case is before the Court on Plaintiff's Motion for Summary Judgment and Defendant's Motion for Order Affirming the Decision of the Secretary.

■ In reviewing the denial of disability benefits, the standard of this Court's review is whether the determination made by the ALJ is supported by substantial evidence. 42 U.S.C. § 405(g); *Lizotte v. Secretary of Health and Human Services*, 654 F.2d 127, 128 (1st Cir.1981). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusions drawn. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

The Court has thoroughly reviewed the entire record, including the transcript of the hearing below, the exhibits, and the briefs submitted by counsel. After careful consideration, the Court finds that the case must be remanded for a determination of whether the claimant's skills are transferable and whether his residual functional capacity is as it was assessed by the ALJ.

The medical evidence and the Claimant's testimony indicate that the Claimant suffers from an assortment of complaints, including asthma with shortness of breath, joint pain, and depression or anxiety. The ALJ separated the Claimant's problems into three basic areas and found that Claimant does not have a severe pulmonary impairment, is not suffering from any mental impairment, but does have a severe orthopedic impairment in his left shoulder. The ALJ then found that Claimant has a residual functional capacity for sedentary work. Although he found claimant to be limited by his asthma in performing jobs in extremely hot or cold temperatures or extremely dirty environments, he found that these limitations did not significantly compromise Claimant's ability to perform sedentary work. The ALJ "accept[ed]" that Claimant experiences pain in his shoulders upon activity and recognized that Claimant may have mild degenerative disc disease and soft spinal bones which may result in pain. However, the ALJ did not find credible Claimant's allegations of extensive and disabling pain. Finding that Claimant had limited education and was approaching advanced age, and relying on a vocational expert's opinion that Claimant's past work was semi-skilled and that he had transferable skills, the ALJ applied Vocational Rule 201.11 of the Medical Vocational Guidelines, [the Grid] 20 C.F.R. Part 404 App. 2, § 201.11, which directed a finding of not disabled.

Claimant complains that the ALJ's routine application of the Grid was erroneous given Claimant's combination of exertional and nonexertional impairments. The regulations set forth a procedure for the Secretary to follow when both exertional and nonexertional impairments are present:

[W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and

work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations. Also, if these combinations of nonexertional and exertional limitations which cannot be wholly determined under the rules in this Appendix 2, full consideration must be given to all the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor.

20 C.F.R. Part 404, App. 2, § 200.00(e)(2). Although the ALJ purported to consider the effect of Claimant's nonexertional impairments before determining that he was not disabled under the Grid, it is clear to the Court that full consideration was not "given to all the relevant facts in the case" to "provide adjudicative weight to be accorded each factor." The ALJ's application of the Grid was based in part on the vocational expert's findings that Claimant has skills that are transferable. The vocational expert's determination of transferability, however, was not informed by adequate information concerning Claimant's exertional and nonexertional impairments. The expert's conclusions in this case were, therefore, neither relevant nor reliable. As the Court of Appeals for the First Circuit has stated:

> [I]n order for a vocational expert's answer to a hypothetical question to be relevant, the input into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities. To guarantee that correspondence, the Administrative Law Judge must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions.

*Arocho v. Secretary of Health and Human Services*, 670 F.2d 374 (1st Cir.1982).

■ The ALJ found that Claimant suffered various types of pain but did not find credible his allegations of extensive and disabling pain. Although Claimant's pain alone was not found to be disabling, it should have been considered by the ALJ in conjunction with Claimant's other impairments. This means that the ALJ should have transmitted his medical findings concerning pain into an accurate hypothetical for the vocational expert, on whose opinion he relied in making his final determination. The record demonstrates that such an assessment would have been pertinent to the expert's opinion. When asked by Claimant's attorney whether pain would have an impact on an individual's ability to do the types of work she had described, the vocational expert stated: "I think that is a medical question, and I would think it would depend upon the degree." The ALJ's determination of the degree of Claimant's pain and how it would limit his abilities were not delineated in his opinion, and were not transmitted to the vocational expert, so his assessment of transferability lacked an important component.

■ Similarly, the ALJ determined that Claimant had asthma and was limited in his ability to work in hot and cold environments and in extremely dusty environments. Neither the symptoms of Claimant's asthma nor the restrictions which the ALJ found on the basis of those symptoms were conveyed to the expert in the ALJ's hypothetical. Initially, the expert responded that there would be no transferability of Claimant's skills, and she was cut off by the ALJ when she started to explain the reason. She stated, "No transferability. Basically because of the ...," and the ALJ supplied the word "fumes." She responded that "[f]umes would be a big problem in any other work which would be similar to that." The ALJ then stated the hypothetical as, "Assuming that he does not have a severe impairment of a pulmonary nature, would he have any transferability?" Although the ALJ found that standing alone Claimant's pulmonary problem was not severe, he was bound to consider it together with Claimant's other impairments. It is

clear that the ALJ determined that the asthma had some effect on Claimant's ability to work, but these facts were not conveyed to the vocational expert so that she could give her evaluation on them. The hypothetical should also have contained far more specific details of Claimant's pulmonary impairment.

One further problem with the ALJ's use of the vocational expert's determination remains. The expert determined that Claimant's transferable skills included fine-finger dexterity, manual dexterity, fine manipulation, and ability to adjust or operate machinery. These findings do not correspond to the "inputs" on which her findings were based. Although the ALJ seemed to ignore her testimony in his eagerness to set the parameters of the hypothetical to include only pulmonary problems, the expert stated that in addition to fumes, her finding of nontransferability was based on

> worker functions, in the Claimant's former work, he was using a lot of gross manipulation, fine finger dexterity, manual dexterity, and, according to the Claimant's testimony, and the Doctor's testimony that would be restricted. Which would, again, restrict the transferability of skills. And restrict a lot of the work processes that he would have to go through.

TR. 102. This qualification by the expert seemed based in part on her previous colloquy with the medical examiner. She had asked the medical examiner if Claimant's orthopedic problems would "affect his gross manipulation, fine finger dexterity?" Tr. 99. He replied that it would and was then asked what kind of work the Claimant might do with his impairments. He responded:

> Well, under normal circumstances, a patient who has, you know, some bursitis of the shoulder, say a tennis elbow, he has no problem in driving. He has no problem in dressing and undressing themselves. They might have a little difficulty in scratching their back or wiping themselves after a bowl [sic] move-

ment. They don't have any difficulty in writing. Oh, some long writing might cause some discomfort, but a normal amount of writing wouldn't bother them too much. Typing, again, they could type to some degree.

> Now, they can use their hands and arms to shuffle papers and file papers, and things of that sort.

Tr. 99.

Claimant had testified previously that he could not do many of the things which the medical examiner mentioned, including dressing himself, driving, and writing. He also stated that he could not grasp well. After the ALJ had focused the vocational expert's inquiry on unspecified pulmonary impairment, she seemed to ignore the dexterity and manipulation problems to which she had initially referred. In response to the ALJ's hypothetical concerning Claimant's skills if he had no pulmonary problems, and in response to a similar interrogatory, the expert listed jobs to which Claimant's skills would be transferable. The ALJ's opinion shows that he had clearly believed at least some of Claimant's testimony regarding limitations on the use of his arms, for he stated that Claimant's shoulder problem would "limit his ability to push and pull on controls." The ALJ did not resolve the conflict raised by the medical expert's and Claimant's testimony concerning his use of his arms and hands. Claimant's abilities in these respects, even as found by the ALJ, were not mentioned in the hypothetical put to the vocational expert. Since the hypothetical on which the expert's conclusions were based did not accurately reflect the combination of Claimant's exertional and nonexertional impairments, the ALJ was not entitled to use those conclusions as a basis for his application of the Grid.

Since this case must be remanded, the Court will not address at this time Claimant's arguments that many of the ALJ's findings are unsupported by substantial evidence. The Court will note, however, that the Grid should not be applied in a case like this where the Claimant

suffers from both exertional and nonexertional impairments unless it has been determined that Claimant retains the residual functional capacity on which the guidelines are predicated. *Torres v. Secretary of Health and Human Services*, 668 F.2d 67, 69 (1st Cir.1981). In this regard, although the ALJ, in his opinion, acknowledges Claimant's pain and does not find it alone to be disabling, he does not adequately consider it in relation to Claimant's residual functional capacity. *See Gagnon v. Secretary of Health and Human Services*, 666 F.2d 662, 668, n. 8 (1st Cir.1981).

Accordingly, it is ORDERED that this case be, and is hereby, REMANDED to the Secretary for another determination of whether Claimant's skills are transferable and for a finding of how Claimant's pain affects his residual functional capacity.

So ORDERED.