March 17, 1993 [NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2088

BIENVENIDO GONZALEZ-GARCIA,

Plaintiff, Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Gilberto Gierbolini, U.S. District Judge]

Before

Selya, Cyr and Boudin,
Circuit Judges.

Raymond Rivera Esteves and Juan A. Hernandez Rivera on brief

for appellant.
Daniel F. Lopez Romo, United States Attorney, Jose Vazquez

Garcia, Assistant U.S. Attorney, and Paul Germanotta, Assistant

Regional Counsel, Dept. of Health & Human Services, on brief for
appellee.

Per Curiam. Claimant Bienvenido Gonzalez Garcia applied

for Social Security disability benefits on May 24, 1989. He

alleged an onset date of April 15, 1988 and claimed that he

had a back condition and a mental impairment. After holding

a hearing, an administrative law judge (ALJ) found that

claimant was not entitled to disability benefits. The

Appeals Council denied claimant's request for review. The

district court affirmed the Secretary's decision and this

appeal ensued.

I.

Claimant was injured at work when he tried to lift a

steel beam. He sought treatment at the State Insurance Fund

(SIF) for back pain. According to claimant, he was given a

course of physical therapy which left him feeling worse. At

some point, he tried to resume work but could not because of

the pain. All of his past jobs involved heavy lifting with

frequent bending and stooping. Since his injury, claimant

states that he cannot sit, stand or walk for any length of

time and he is constantly changing position. He cannot bend

or stoop. He cannot lift objects weighing more than five

pounds.

As for his daily activities, claimant testified that he

could not take care of his personal needs; his wife helps him

to bathe and dress. He does not leave the house except to

visit his father. Sometimes he watches television or listens

-2-

to the radio. He cannot help with household chores and does

not drive. During the day, he sits or stands on the balcony;

he never walks.

Claimant described his pain as constant; it starts in

his lower back and spreads to his buttocks, thighs, legs and

feet. He also complained of "palpitations" in his bones. He

does not sleep well due to the pain and cramps in his legs.

In addition to his back pain, he suffers from headaches and

nosebleeds. He takes medication which relieves the pain for

about two hours.

Claimant also takes medication for a dysthymic disorder.

He stated that he hears voices calling his name and sees

shadows. He is irritable and noises bother him. He has

problems relating to people and prefers to be alone. He has

received sporadic therapy for this impairment at the local

mental health center.

II.

The ALJ determined that claimant has a possible

herniated disc at L5-S1, back pain and an affective disorder

which alone or in combination did not meet the listings. He

credited claimant's allegations of pain to the extent that

claimant was precluded from engaging in strenuous work-

related activities. Nonetheless, the ALJ found that claimant

retained the residual functional capacity (RFC) to perform

the exertional requirements of work except to the extent that

-3-

claimant could not lift over ten pounds. Also, he could not

sit, stand or walk for over one hour at a time; however,

claimant could perform each of these activities for up to six

hours per eight-hour workday. He could stoop and kneel only

occasionally. Aside from these limits, claimant retained the

capacity to perform the full range of sedentary work.

The ALJ determined that Rule 201.25 of Table 1 of the

Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpt. P,

App. 2 (1992) (the "Grid"), would direct a finding of "not

disabled" for a person such as claimant -- a younger

individual with a limited education (7th grade) and no

transferable work skills. Because claimant's capacity for the

full range of sedentary work had not been "significantly

compromised" by his nonexertional limits, the ALJ used Rule

201.25 as a framework to conclude that claimant was not

disabled. In so finding, the ALJ stated that claimant's

mental impairment did not impose "more than slight

limitations in those areas considered relevant to the

capacity to perform work-related activities."

III.

On appeal, claimant essentially argues that his back

condition prevents him from engaging in even sedentary work.

He also avers that the ALJ erred in applying the Grid on the

ground that his nonexertional impairments -- pain and his

emotional condition -- significantly limit his ability to

-4-

perform the full range of sedentary work. We address these

issues separately.

A. Back Condition

The record contains conflicting evidence concerning the

effect of claimant's back problem on his physical

capabilities. X-ray results showed a 20 to 25 percent

narrowing of the disc space at L5-S1, suggestive of a bulging

or herniated disc. Also, a C-T scan revealed a possible

bulging or herniated disc at L4-L5 with a slight swelling of

the left nerve root.

Over the course of his treatment at the State Insurance

Fund, claimant's condition varied. For example, on September

30 and October 13, 1988, claimant exhibited persistent lumbar

muscle spasm and limited range of motion. However, a

November 2, 1988 special medical report stated that

claimant's back was well and there was no muscle spasm. In

addition, claimant's range of motion was normal and there

were no neurological deficits. The report concluded that

claimant could perform light work and should be referred to

vocational rehabilitation. Although claimant exhibited

marked limitation in the movement of his trunk on November 7,

1988, there still was no significant muscle spasm and

claimant could walk without difficulty. When claimant was

discharged from the SIF in April 1989, he had residuals

-5-

consisting of slight spasm of the para-vertebral muscles with

slight limitation of movement of the trunk in all directions.

Claimant refused a referral to vocational rehabilitation.

A neurological evaluation performed in July 1989

revealed no evidence of paravertebral muscle spasms or motor

atrophy; there was normal strength in all muscles and no

motor reflex or sensory disturbances. Claimant's gait and

posture were normal. He refused to bend his spine. In

January 1990, claimant was again examined by a consulting

neurologist. At this time, claimant could not walk on his

heels or toes, exhibited some weakness of the left toe and

had spasm in his paravertebral muscles. His range of motion

was limited.1

A nonexamining physician completed an RFC form in August

1989. This form reveals that claimant can frequently lift

and carry up to ten pounds and occasionally can lift and

carry twenty pounds. He can only occasionally stoop and

crawl. His disc pathology limits his ability to use his

lower extremities to push and pull. However, he can sit,

stand and walk for up to six hours per work day.

The medical findings outlined above amply support the

conclusion that claimant retained the ability to meet the

1. Neither of these physicians filled out RFC assessments
despite the requirement in the regulations that a complete
consultative examination should include such findings. See

20 C.F.R. 404.1519n(c)(6).

-6-

exertional demands of sedentary work. Muscle spasm and

limits in range of motion were not consistently present.

Further, claimant rarely exhibited any neurological or motor

deficits. Finally, the RFC assessment indicates that

claimant's disc problems would not prevent him from working

at the sedentary level. Because "a reasonable mind,

reviewing the evidence in the record as a whole, could accept

it as adequate to support his conclusion," we must uphold the

Secretary's factual determinations. Rodriguez v. Secretary

of Health and Human Services, 647 F.2d 218, 222 (1st Cir.

1981).

B. Nonexertional Impairments

Next, claimant alleges that the ALJ did not properly

credit his complaints of totally disabling pain. We agree

that there exists an objective medical impairment -- bulging

or herniated discs at L4-L5 and L5-S1 -- that can reasonably

be expected to cause pain. See Avery v. Secretary of Health

and Human Services, 797 F.2d 19 (1st Cir. 1986).

Nonetheless, as described above, the dearth of evidence of

motor, sensory or strength deficits conflicts with the level

of pain claimant alleges. Further, claimant testified that

medication relieved the pain for up to two hours. Because

the ALJ diligently considered the factors outlined in Avery,

we find that his decision concerning the level of claimant's

-7-

pain is supported by substantial record evidence and did not

preclude reliance on the Grid.2

Claimant's mental impairment presents a closer question.

Absent significant nonexertional limitations, the Grid

provides a "streamlined" method by which the Secretary can

sustain his burden of proof at step five of the sequential

evaluation process. Ortiz v. Secretary of Health and Human

Services, 890 F.2d 520, 524 (1st Cir. 1989) (per curiam);

Sherwin v. Secretary of Health and Human Services, 685 F.2d

1, 2 (1st Cir. 1982), cert. denied, 461 U.S. 958 (1983).

However, where a claimant has a nonexertional impairment in

addition to an exertional limit, the Grid may not accurately

reflect the availability of jobs such a claimant could

perform. Ortiz, 890 F.2d at 524; Gagnon v. Secretary of

Health and Human Services, 666 F.2d 662, 665 n.6 (1st Cir.

1981).

The decision to rely on the Grid in this situation

depends upon whether claimant's mental impairment

"significantly affects [his] ability to perform the full

range of jobs" at the sedentary level. See Lugo v.

2. We also note that claimant's limitations in stooping and
crawling -- nonexertional impairments -- do not significantly
limit his access to the full range of sedentary work. See

Social Security Ruling 85-15 (to meet requirements of
sedentary work, an individual would need to stoop only
occasionally and would rarely be required to crawl); cf.

Frustaglia v. Secretary of Health and Human Services, 829

F.2d 192, 195 (1st Cir. 1987) (per curiam).

-8-

Secretary of Health and Human Services, 794 F.2d 14, 17 (1st

Cir. 1986) (per curiam); Ortiz, 890 F.2d at 524. If the

occupational base is significantly limited by this

impairment, the Secretary erred in using the Grid to carry

his burden at step five. See Ortiz, 890 F.2d at 524. In

such a case, the testimony of a vocational expert generally

would have been required. Id.

Here, the ALJ essentially determined that claimant's

emotional condition was not severe and thus, did not impinge

on claimant's ability to engage in the full range of

sedentary, unskilled work. There are two distinct sets of

mental capabilities which are required for the performance of

unskilled work. Id. at 526; Social Security Ruling (SSR) 85-

15. These are (1) the intellectual ability to perform such

work and (2) the ability to cope with the demands of the work

environment per se. Id.

As for the first category -- the ability to carry out

simple instructions, respond to supervision and cope with

coworkers -- we believe that there is sufficient evidence to

support the ALJ's conclusion that claimant's dysthymic

disorder did not significantly impair his functioning. A

consultative examination performed by a psychiatrist in May

1990 indicates that claimant was coherent, relevant, in

contact with reality and completely oriented. His thought

processes were organized and there was no evidence of

-9-

delusions or hallucinations. His memory was intact.

Although his attention, concentration and retention were

"slightly diminished," claimant's judgment and reasoning were

not impaired. The psychiatrist diagnosed a mild dysthymic

disorder; claimant's prognosis was fair.

This psychiatrist also completed a mental RFC

assessment. He indicated that claimant's abilities to

maintain attention and to understand, remember and carry out

both complex and detailed job instructions were good. His

capacity to deal with simple instructions was unlimited. He

also was rated as having good abilities in the areas of using

judgment, interacting with supervisors, relating to coworkers

and functioning independently.

The second category includes the ability to remain in

the workplace the entire day and to attend work regularly and

punctually. In this area, claimant was rated as being

capable of demonstrating responsibility, relating predictably

in social situations and behaving in an emotionally stable

manner. However, his ability to deal with "work stress" was

only fair. Fair is defined on the RFC form as "seriously

limited but not precluded."

Given the evidence anent claimant's limited capacity to

deal with "work stress," his mental impairment might well be

-10-

deemed of some severity.3 But, we believe that the ALJ's

reliance on the Grid in this particular situation was

nevertheless appropriate (although by no means inevitable).

See Ortiz, 890 F.2d at 524 (explaining that claimant's mental

impairment, even if severe, is not considered disabling

unless it has eroded the occupational base for the full range

of sedentary, unskilled work). Aside from the finding that

claimant was seriously limited in his capacity to confront

the stress of work in general, the examining psychiatrist

concluded that claimant's abilities in the more specific

areas of dealing with the work environment -- maintaining

concentration, being reliable, behaving in an emotionally

stable manner and accepting supervision -- were good. Also

significant is the fact that claimant's situation does not

place him anywhere near the dividing line between disabled

and not disabled under Table 1 of the Grid. See id. at 527-

28.

For the foregoing reasons, the judgment of the district

court is affirmed.

3. An impairment is not severe only when it has no more than
"a minimal effect on the person's . . . mental ability . . .
to perform basic work activities." SSR 85-28.

-11-