Ruby M. FLOYD, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of Health & Human Services, Defendant.

No. 81 C 5905.

United States District Court, N.D. Illinois, E.D.

Aug. 30, 1982.

Sheldon M. Gomberg, Chicago, Ill., for plaintiff.

Daniel K. Webb, U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Ruby M. Floyd brings this suit under 42 U.S.C. § 405(g) to review the final decision of the Secretary of Health & Human Services denying her application for Social Security disability benefits and for Supplemental Securing Income (hereinafter collectively referred to as "disability benefits"). Cross motions for summary judgment have been filed asking this court to determine whether the Secretary's decision is supported by substantial evidence or, alternatively, whether the claim should be remanded to the Secretary and another hearing held with counsel present. For the reasons set forth below, the motion to remand is granted.

42 U.S.C. § 423(d)(1)(A) defines disability as "inability to engage in any substantial gainful activity by reason of any medical impairment that can be expected to last for over twelve months." More specifically, disability means not only inability to do the previous type of work but also the incapacity to do any other kind of work which exists in the national economy, "considering opportunities that exist either in the claimant's region or in the several regions of the country." 42 U.S.C. § 423(d)(2)(A). *See Spencer v. Schweiker,* 678 F.2d 42 (5th Cir. 1982), *Hogan v. Schweiker,* 532 F.Supp. 639 (D.Colo.1982).

To be eligible for disability benefits a claimant must make a prima facie showing of an impairment sufficiently severe to preclude a return to his or her previous employment. *Decker v. Harris,* 647 F.2d 291, 293 (2d Cir.1981). Once this is established the burden shifts to the Secretary to present evidence showing that there exists in the national economy substantial gainful work which claimant, considering his or her age, education, experience and training, is able to perform. *Spencer v. Schweiker, supra; Stark v. Weinberger,* 497 F.2d 1092 (7th Cir.1974).

In response to criticism over disparate treatment of seemingly similar claims, the Social Security Administration recently promulgated new and detailed regulations which establish an orderly sequence of adjudication for Social Security disability claims. *Kirk, et al. v. Secretary of Health & Human Services,* 667 F.2d 524 (6th Cir. 1981). The Seventh Circuit described the "sequential evaluation for adjudication of disability claims as follows:

The first inquiry under the sequence concerns whether a claimant is currently engaged in substantial gainful employment. If it is found that he is, the claim is denied without reference to the other steps in the sequence. If he is not, the second inquiry is whether the claimant has a "severe" impairment. If he does not, the claim is denied. If a severe impairment is present, the third inquiry is whether such impairment meets or equals one of the impairments listed under Appendix I to Subpart P of the Administrative Regulations No. 4. If it does, the claim is approved. If it does not, the fourth inquiry is whether the claimant's impairments prevent him from performing his past relevant work. If he is found to be capable of returning to his past relevant work, the claim is denied. If he is not found to be so capable, the fifth and final inquiry is whether claimant is able to perform other forms of substantial gainful activity, considering his age, education and prior work experience. If he is not, the claim is approved.

The medical-vocational guidelines, which are contained in Appendices 2, Subparts P and I, Parts 404 and 416, 20 CFR, are used in determining whether the claimant is disabled when and if the fifth step in the evaluation process is reached. To apply the guidelines, the ALJ must make findings of fact as to the claimant's vocational factors, i.e., age, education, and work experience, as those terms are defined by the regulations ... and his residual functional capacity.... When the findings of fact made as to all factors coincide with the criteria of a rule [contained in the guidelines], that rule directs a factual conclusion of disabled or not disabled.

*Cannon v. Harris,* 651 F.2d 513 (7th Cir. 1981). *See also Cummins v. Schweiker,* 670 F.2d 81 (7th Cir.1982), *Hogan v. Schweiker, supra,* at 643. These regulations necessarily require a detailed factual analysis of plaintiff's background and medical condition.

Ms. Floyd was born on April 12, 1924, has an eleventh grade education and has minimal additional training as a nurse's aid. With the exception of a two-year stint as a cook's helper, plaintiff's primary work experience between 1962 and 1979 was as a nurse's aid, a job that requires a significant amount of standing, bending and lifting. Plaintiff maintains that she is incapable of performing her prior work or pursuing any other type of employment because she suffers from high blood pressure, depression, and arthritis in various joints. Such ailments, of undeterminate dates of origin, evidently worsened over time and ultimately caused her to quit her work as a nurse's aid in May of 1979. One year later Ms. Floyd filed a claim for disability benefits with the Social Security Administration. That claim was denied initially and upon reconsideration. Exercising her right to an independent *de novo* review of the matter, plaintiff appeared without counsel at a hearing before an Administrative Law Judge ("ALJ") on April 8, 1981.

Ms. Floyd was the only witness to testify at the hearing. Under questioning by the ALJ she stated the following: In addition to arthritis in her side, hands and knees, plaintiff experiences shortness of breath, she can walk only two blocks before tiring, she cannot climb steps without resting every third or fourth step, and she is unable to stoop or run. As for lifting, Ms. Floyd said, "I can't lift anything too well that is over ten pounds. Maybe around seven or eight pounds, roughly. It makes me so tired." Other physical complaints include high blood pressure, which occasionally causes dizziness, a tumor in the womb, with unspecified effect on her ability to work, cancer, which was not elaborated upon, and pain around her heart, stomach and chest. Finally, plaintiff testified that she suffers from emotional disorders and at some point in the past had a nervous breakdown. When asked how her nervous condition affected her now, plaintiff responded

Well, noises and depression. I can't stand worry and noises. I have to have something for insomnia. I have to take these nerve pills there. I got two of the same nervous pills there, but one of them is a higher milligram.

Because of these ailments Ms. Floyd visits a doctor once a month. Dr. J. Niazir has been her treating physician at least since 1978. Her prescribed medications include Clinoril, 20 milligrams twice a day, presumably for arthritis; Valium, 5 milligrams twice a day, and Tylenol #3 which plaintiff says she takes twice a day to alleviate pain.

With regard to her daily activities Ms. Floyd testified that she cooks, washes dishes and cares for her personal needs, although experiencing some difficulties. In exchange for free rent plaintiff cleans the kitchen and halls, collects the rent and moves empty garbage cans. Finally, while she used to visit friends and relatives frequently, she rarely does so now except for attending church on Sunday.

In addition to plaintiff's testimony, information secured from Dr. Niazir was admitted into evidence. Submitted evidence included both the records kept by the doctor of Ms. Floyd's visits, and reports filled out at the behest of the Social Security Administration. Unfortunately, the monthly no-

tations of plaintiff's condition are virtually illegible. What can be discerned is a significant weight gain of thirty pounds over the course of a year and, conversely, a steadily decreasing blood pressure. In a report dated July 12, 1980, Dr. Niazir described his patient's conditions as hypertension, depression and osteoarthritis of the lower back. He indicated that there was no end organ damage as a result of the high blood pressure, no symptoms of heart disease, nor any evidence of chest pain. Dr. Dilts, of the Social Security Administration, reviewed the medical evidence and concurred with Dr. Niazir's conclusions: "There is no anatomical deformity, bony destruction or bony hypertrophy in the spine, with no atrophy or local inflammatory or systemic signs. There is no weakness, and no loss of range of motion. Ambulation is normal.

After considering such evidence, the ALJ found Ms. Floyd ineligible for disability benefits. In so doing, the ALJ made the following findings of fact:

\*      \*      \*      \*      \*      \*

2. The claimant has the following impairments: hypertension, osteoarthritis of the lower back, and depression.

3. Allegations of severe and disabling pain are not credible in view of claimant's activities, and the medical evidence submitted.

4. The claimant does not have any impairment or impairments which significantly limits the ability to perform basic work-related functions; therefore, the claimant does not have a severe impairment.

5. Since the claimant does not have a severe impairment, she was not under a disability as defined in the SSA, as amended, at any time through the date of this decision.

Plaintiff lodges two arguments against the findings and conclusion of the ALJ: first, plaintiff was denied a full and fair hearing because she was not represented by counsel and therefore the cause should be remanded so that an adequate hearing can be conducted; second, the ALJ's decision was not supported by substantial evidence, and thus his findings should be reversed and disability benefits awarded.

■      While Ms. Floyd had a statutory right to counsel at her Social Security hearing, see Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir.1980), it is clear that she may waive that right and elect to proceed without counsel. See Ware v. Schweiker, 651 F.2d 408, 413 (5th Cir.1981), cert. denied 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). "But it is equally clear that such a waiver must establish, at some point, that the claimant is 'properly apprised of his options concerning representation' to be effective. Peppers v. Schweiker, 654 F.2d 369, 371 (5th Cir.1981). A claimant cannot knowingly and intelligently waive his statutory right to counsel when he is not adequately informed of it either in a prehearing notice or at his hearing." Smith v. Schweiker, 677 F.2d 826, 828 (11th Cir.1982).

The Secretary contends that the following colloquy indicates Ms. Floyd's voluntary waiver of representation.

ALJ:—Now, Mrs. Floyd, you were advised in the Notice of Hearing of your right to be represented at this hearing. Since you are appearing without a representative, I assume that you do not wish to be so represented. Is that correct?

CLAIMANT: No. I did want to get a lawyer, but I tried to see one, and the price that he charged, I couldn't afford it, and I said, "Well, I just hope by the grace of God I'll just try to go along and do what I could.

ALJ: All right.

CLAIMANT: So—

ALJ: Then you'd like to proceed without an attorney at this time?

CLAIMANT: I have made notes about —well, this is my (inaudible).

ALJ: No. No. Just—we'll get to your testimony in a few minutes.

CLAIMANT: Oh.

ALJ: But right now let me finish my opening statement.

CLAIMANT: All right.

ALJ: You do wish to proceed without an attorney at this time? Is that correct?

CLAIMANT: Yes.

Plaintiff's statements, taken as a whole, in no way evince a desire to proceed without counsel. To the contrary, it is obvious that Ms. Floyd wished to acquire legal representation but had been unable to do so. *See Cowart v. Schweiker,* 662 F.2d 731, 734 (11th Cir.1981).

■ Even if such a discussion could somehow be construed as a voluntary relinquishment of the right to counsel, the information given the claimant was inadequate to ensure a *knowing* waiver. The ALJ provided no explanation of the valuable role an attorney could play in the proceedings and "where as here, the record discloses possible mental illness coupled with a misconception of the role of a lawyer, the ALJ should have, at the very least, explained [the right to counsel and the role of an attorney at the hearing] in greater detail and with greater care." *Smith v. Secretary of Health, Education & Welfare,* 587 F.2d 857, 860 (7th Cir.1978). Specifically, the claimant should be informed as to the possibility of free counsel and limitations on attorney fees to 25% of any eventual award. *Smith v. Schweiker,* 677 F.2d 826, 828 (11th Cir. 1982); *Clark v. Schweiker,* 652 F.2d 399, 403 (5th Cir.1981). *But see Garcia v. Califano,* 625 F.2d 354 (10th Cir.1980). Since there is no indication that Ms. Floyd was ever informed fully of her rights and options, we cannot presume that her statements were the expression of her desire to waive her right to counsel and to represent herself at the hearing. *Smith v. Schweiker, supra,* at 829.

■ The mere fact that Ms. Floyd ineffectively waived her right to counsel is not, by itself, cause for remand. *Vidal v. Harris,* 637 F.2d 710, 713 (9th Cir.1981). "Lack of counsel does not affect the validity of the hearing and hence warrant remand, unless the claimant can demonstrate prejudice or unfairness in the administrative proceedings." *Id. see Sykes v. Finch,* 443 F.2d 192, 194 (7th Cir.1971). In all proceedings,

whether the right to counsel has been exercised or waived, the ALJ has an inherent obligation to develop a full and fair hearing. "Where the right to representation has not been waived, as in this case, the ALJ's basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appears before him." *Cowart v. Schweiker, supra,* at 735. In particular, the ALJ has a duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Gold v. Secretary of Health, Education & Welfare,* 463 F.2d 38, 43 (2d Cir. 1972). *See Echevarria v. Secretary of Health & Human Services,* 685 F.2d 751 (2d Cir.1982); *Smith v. Secretary of Health, Education & Welfare, supra.* Moreover, the ALJ must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Thompson v. Schweiker,* 665 F.2d 936, 941 (9th Cir.1982), *quoting Rosa v. Weinberger,* 381 F.Supp. 377, 381 (E.D.N.Y.1974).

■ In the case at bar the record amply demonstrates that for numerous reasons the ALJ failed to discharge his special duty in the course of the thirty-five-minute hearing.[1] First, there was insufficient medical evidence procured: "Given the illegibility of the medical records ... and the limited educational background of the claimant, it was incumbent upon the administrative law judge to emphasize the desirability of producing, and to afford an opportunity to produce expert testimony as to her medical disabilities and their effect on her capacity to engage in any substantial, gainful work within the meaning of the Act." *Smith v. Secretary of Health, Education & Welfare, supra,* at 860, *quoting Cutler v. Weinberger,* 516 F.2d 1282, 1286 (2d Cir.1975). More specifically, the ALJ failed to question the effect of the numerous medications the plaintiff takes, and neglected to ascertain the prescribing physician for each drug. Particularly when some of the prescribed

---

1. The fact that the hearing lasted only 35 minutes is itself an indicia of insufficiency. *Compare Clark v. Schweiker,* 652 F.2d 399, 403 (5th Cir.1981), *with Smith v. Schweiker, supra,* at 829.

medication can cause drowsiness or other adverse reactions, probing into the precise effect on plaintiff is an essential line of inquiry for determining a person's ability to work. *See Hogan v. Schweiker, supra.*

Moreover, numerous aspects of plaintiff's tumor, cancer and thyroid condition were inadequately explored. Similarly, the nature and extent of the pain plaintiff experiences requires greater inquiry since severe pain by itself can mandate a finding of disability. *See Wilson v. Schweiker,* 681 F.2d 526 (8th Cir.1982), (pain can be disabling; ALJ must seriously consider complaints and make explicit credibility findings rather than reject testimony because medical evidence did not corroborate it). Nor were specific questions addressed to Dr. Niazir regarding his assessment concerning her capacity for various types of employment.

The ALJ was also deficient in his limited probing of the physical effort required in the everyday tasks that Ms. Floyd performed. For example, the weight of the garbage cans which Ms. Floyd moves, the distance they are carried, and the time and effort involved in such a task were never questioned. Finally, the precise nature of Ms. Floyd's prior employment as a nurse's aid and the physical demands of such a job require further investigation.

Since this court finds that a remand for a full and fair hearing is necessary,[2] discussion of whether the Secretary's decision is supported by substantial evidence is not required. Several points relevant both to the substantial evidence issue and to the question of a full and fair hearing, however, must be made. First, the ALJ's cryptic findings of fact must be questioned, particularly considering the hearing examiner's duty when the claimant appears *pro se.* For example, the ALJ makes the blanket statement that Ms. Floyd's complaints of pain are not credible in light of other evidence, without detailing the precise contra-

dictions between the medical evidence and the claimant's testimony. Second, the ALJ's finding that the claimant was not severely disabled without any explanation is inadequate. We find persuasive the reasoning of Judge Knapp, where in an analogous situation a remand was ordered.

On the record before us, and in light of the inconclusive nature of the medical evidence, any appropriate finding the ALJ may have made that plaintiff was not disabled could not be disturbed for want of substantial evidence. However, the Court of Appeals for this Circuit has explicitly adopted the rule that once an applicant has met the initial burden by establishing his inability to continue in his former type of employment, [the burden shifts to the Secretary.]

"This rule necessarily requires the Secretary to make a finding as to whether or not the applicant is capable of returning to his former employment; otherwise reviewing courts would be unable to determine whether or not the burden of going forward has shifted to the Secretary." *Rivera v. Secretary of HHS* (S.D.N.Y. October 7, 1980) No. 809 Civ. 1024, slip op. at 4.

\*     \*     \*     \*     \*     \*

The ALJ's findings are completely silent on this matter; no finding was made about plaintiff's ability to return to his old job. The finding that plaintiff does not have any impairment or impairments which significantly limit the ability to perform basic work-related functions" (Tr. 14) certainly does not establish that he can perform the functions of a pipe worker, which apparently, involve lifting heavy loads and working under extreme physical strain.

*Santiago v. Secretary of Health & Human Services,* 529 F.Supp. 469, 472–73 (S.D.N.Y. 1982).

For all these reasons, the motion to remand to the Secretary, so that plaintiff be

---

**2.** Although the 1980 Amendment to the Social Security Act substantially modified the court's power to remand for the taking of additional evidence, it does not limit remands in cases

where the Secretary has misapplied the law or has not provided a full and fair hearing. *See Carter v. Schweiker,* 649 F.2d 937, 942 (2d Cir.1981).

accorded a full and fair hearing, is granted. Additionally, plaintiff requests that on remand specific instructions be given the ALJ concerning the evidence to be considered. We concur that the records from Cook County Hospital be obtained, and that further testimony and records be elicited from the claimant (or her physician) regarding her weight gain, cancer treatment, thyroid condition and so forth. Whether further physical and mental evaluations (including an EKG) need be performed, we leave to the discretion of the ALJ. The necessity for such tests in order to ensure Ms. Floyd her right to a full and fair hearing on her claim can best be ascertained only after the other medical evidence ordered above is produced.

Accordingly, we hold that Ms. Floyd was denied a full and fair hearing, and the case is remanded to the Secretary for further proceedings consistent with this opinion.