**David HEGGARTY, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**Civ. A. No. 90–11513–Y.**

United States District Court,
D. Massachusetts.

Feb. 22, 1991.

Annette Forde, U.S. Atty.'s Office, Boston, Mass., for defendant.

Ronald B. Eskin, Merrimack Valley Legal Services, Lowell, Mass., for plaintiff.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This matter is before the Court for review of a final decision of the Secretary of Health and Human Services ("the Secretary") denying benefits to the claimant, David Heggarty ("Heggarty"). Heggarty here seeks to have the Court reverse or remand the decision of the Secretary and award benefits to him.

### I.

David Heggarty was born on February 15, 1953, is currently 37 years of age, and resides in Lawrence, Massachusetts. He has completed the twelfth grade and has had vocational training in culinary arts. Tr. at 75, 117. Mr. Heggarty has worked in various places including grocery stores, restaurants, and taverns. Tr. at 156. Since 1978, he has held more than 14 different positions. Tr. at 157.

Mr. Heggarty filed an application for social security disability insurance benefits and for supplemental security income under Titles II and XVI of the Social Security Act on September 20, 1988. Tr. at 150, 276. In his application, he alleged that he was disabled and unable to work due to his gout, allergies, emotional problems, alcoholism, arthritis, eczema, and high blood pressure. Tr. at 152.

Heggarty's application for social security disability benefits was denied by the Social Security Administration on November 10, 1988. He then filed a request for reconsideration on December 2, 1988 which also resulted in a denial of benefits. Tr. at 181, 207. His application for supplemental security income was also denied. Tr. at 281–282.

Heggarty then filed a request for a hearing before an administrative law judge on February 7, 1989. Tr. at 208. Pursuant to his request, a hearing was held before an administrative law judge on June 20, 1989. Although the administrative law judge had advised Heggarty of his right to counsel, he appeared in person and represented himself. Tr. at 38. On November 27, 1989, the administrative law judge issued an opinion denying Heggarty's applications for social security disability benefits and supplemental security income.

### II.

Heggarty first claims that his waiver of the right to counsel at the June 20, 1989 disability hearing was not made knowingly and intelligently. He argues that the administrative law judge had an obligation to notify him of the availability of free legal services and, had he known of these services, he would not have attended the hearing unrepresented.

■ A claimant has a right to have a representative appear at an administrative hearing and state his case for him. The claimant may also choose to waive this right and appear *pro se* as long as this decision is made knowingly and intelligently. *See Ramirez v. Secretary of Health, Educ. & Welfare*, 528 F.2d 902, 903 (1st Cir.1976).

■ Although the administrative law judge did not notify Heggarty that he could possibly obtain representation at no cost, under the circumstances of this case, he had no duty to do so.[1] At the hearing, the claimant did not express any indication whatsoever that he wished to retain the services of an attorney but could not afford to do so.[2] An administrative law judge is

---

1. This is not meant to suggest that administrative law judges should not advise every claimant of the availability of no cost legal services. Advising all claimants of the availability of no cost legal services would seem to be the best course as it would both maximize the amount of information available to claimants when they consider whether to waive their right to counsel as well as obviating litigation over this very issue.

2. The following colloquy took place between Mr. Heggarty and the administrative law judge ("ALJ") at the start of the June 20, 1989 hearing:

 ALJ: ... [T]he application before us is the only valid and current one at this point. We're going to have a hearing in that regard, of course. The record can show the Claimant is present, but not represented or accompanied. You were told and you understand your right to counsel or representation, Mr. Heggarty?

not required to question a claimant's decision to appear without counsel where the claimant manifests that he has been told and understands his right to representation and no circumstances exist which indicate that this decision was not knowingly and intelligently made. *See id.; Scherer v. Schweiker,* 530 F.Supp. 128, 133 (S.D.N.Y. 1982). *Cf. Spears v. Heckler,* 625 F.Supp. 208, 218 (S.D.N.Y.1985) (claimant did not freely and knowingly waive her right to counsel when faced with the choice of appearing *pro se* or suffering dismissal of her case).

The cases cited by Heggarty are not to the contrary. In *Clark v. Schweiker,* 652 F.2d 399, 403–04 (5th Cir.1981), the court found that there was no waiver of the right of representation when the claimant specifically indicated that she did not have enough money to retain an attorney and the administrative law judge did not respond to this concern.[3] Similarly, in *Floyd v. Schweiker,* 550 F.Supp. 863, 866–67 (N.D.Ill.1982), the court found that the claimant did not knowingly and intelligently waive her right to representation when she told the administrative law judge that she tried to retain an attorney but she couldn't afford the price that he charged and the administrative law judge proceeded to press her to waive her right to representation.[4] And in *Vance v. Heckler,* 579 F.Supp. 318, 322 (N.D.Ill.1984), also cited by Heggarty, the court found that the claimant, who had a long history of mental illness and only a sixth grade education, did not knowingly and intelligently waive his right to counsel where the administrative law judge made a brief statement discouraging the plaintiff from retaining an attorney.[5] The circumstances involved in these cases are not present here. As mentioned above, Heggarty never stated that he wanted to retain an attorney but could not do so because of the cost. Moreover, unlike the claimant in *Vance,* Heggarty was not discouraged here from retaining an attorney by the administrative law judge.

Second, Heggarty claims that he was denied a full and fair hearing as he was unrepresented and the administrative law judge made no effort to assure that the record was complete. More specifically, he claims that the administrative law judge did not obtain statements from Dr. Bixby, a physician Heggarty visited after he filed

---

A: I do, sir.

**3.** The following exchange took place between the ALJ and the claimant ("CLMT") in *Clark:*

ALJ: ... In the notice that we sent, we advised that you have a right to have an attorney present at one of these proceedings. ... [S]ince you're here without an attorney, I presume you want me to go ahead without one. Is that right?

CLMT: I don't have any money to get one.

ALJ: All right. You're applying for both regular disability benefits and also supplemental security income.

652 F.2d at 403.

**4.** The following exchange took place between the administrative law judge and the claimant in *Floyd:*

ALJ: Now, Mrs. Floyd, you were advised in the Notice of Hearing of your right to be represented at this hearing. Since you are appearing without a representative, I assume that you do not wish to be so represented. Is that correct?

CLMT: No. I did want to get a lawyer, but I tried to see one, and the price that he charged, I couldn't afford it, and I said, 'Well, I just hope by the grace of God I'll just try to go along and do what I could.'

ALJ: All right.

CLMT: So—

ALJ: Then you'd like to proceed without an attorney at this time?

CLMT: I have made notes about—well, this is my (inaudible).

ALJ: No. No. Just—we'll get to your testimony in a few minutes.

CLMT: Oh.

ALJ: But right now let me finish my opening statement.

CLMT: All right.

ALJ: You do wish to proceed without an attorney at this time? Is that correct?

CLMT: Yes.

550 F.Supp. at 866–67.

**5.** The administrative law judge in *Vance* made the following statement to the claimant and his wife:

You're entitled to have a lawyer at these hearings if you want one. Okay. If you think that you and [your wife] together can tell me what's going on and what your problems are, we probably can do without it. You think you can do this alright (sic)?

The claimant then responded, "Yeah."

579 F.Supp. at 322.

his claim, and also did not obtain any reports from the hospital where Dr. Bixby had treated Heggarty.[6] Heggarty also argues that the record was incomplete as it lacks any "comprehensive report" of the opinions of the Psychology Center in Lawrence regarding his "functional abilities." Brief at 6.

Due to the non-adversarial nature of disability proceedings, the administrative law judge has some responsibility for developing the evidence. *DeBlois v. Secretary of Health and Human Services*, 686 F.2d 76 (1st Cir.1982). This responsibility is somewhat increased in cases where the claimant is not represented by counsel. *See id.; Currier v. Secretary of Health, Educ. & Welfare*, 612 F.2d 594 (1st Cir. 1980).

Under existing law, however, "it is clear that the absence of counsel, without more, creates no basis for remand." *Evangelista v. Secretary of Health and Human Services*, 826 F.2d 136, 142 (1st Cir.1987). While a skilled attorney would almost certainly have presented the claimant's case more persuasively, this is not enough to disturb an administrative proceeding. *Id.* at 143. As stated by the Third Circuit,

[t]he fact that a claimant is unrepresented by counsel and has knowingly waived this right is not alone sufficient for remand. However if it is clear that the lack of counsel prejudiced the claimant or that the administrative proceeding was marked by unfairness due to the lack of counsel, this is sufficient for remand, or reversal.

*Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir.1980) (citation and footnote omitted).

From a review of the record of the instant case, there is no indication that Heggarty was prejudiced by his lack of representation. He was able to state his position completely, communicating all the relevant information to the administrative law judge. Similarly, there is no suggestion in the record that the hearing was marked by unfairness due to the lack of counsel. Thus, the sole fact that Heggarty was unrepresented by counsel at the hearing does not provide any basis for remand.

The record here contains several reports of The Psychological Center concerning their treatment and assessment of Heggarty.[7] Heggarty's third claim is that these records are too vague and overbroad to permit ultimate findings to be based thereon. The Treatment Plan dated May 12, 1988 enumerates some of Heggarty's long-term goals which included sobriety, maintenance of good health, learning to control his anger, and job stability. Tr. at 314. The latest Treatment Plan contained in the record (dated August 12, 1988) seems to evidence progress towards these goals, most notably that his alcoholism appeared to be under control and that his ability to work still continued. Tr. at 316. In any case, these reports specifically speak to Heggarty's functional abilities at various points in time from May 5, 1988 to August 12, 1988. For example, the Transfer Summary dated July 28, 1988 notes that he had, as of that date, managed to remain employed and was attempting to avoid "blowing up" at work by discussing interpersonal conflicts in his treatment sessions. Tr. at 315. Each report from The Psychological Center also notes Heggarty's success in maintaining sobriety. *See* Tr. at 312–16. This is sufficient detail to support the ultimate findings made in this case. Accordingly, the opinions of The Psychological Center, Inc. in Lawrence which are contained in the record do not warrant remand.

Although there is no indication in either the record or the decision that the administrative law judge sent for Dr. Bixby's report, under the circumstances of this case, a remand on this basis is also not

6. Apparently, the administrative law judge told Heggarty that he was going to send for Dr. Bixby's report. *See* Tr. at 65.

7. The following reports from the Psychological Center, Inc. are contained in the record: an Evaluation dated May 5, 1988, a treatment plan dated May 12, 1988, a Transfer Summary dated July 28, 1988, and a Treatment Plan dated August 12, 1988. Tr. 312–16.

warranted. According to Heggarty, Dr. Bixby gives him allergy shots. Tr. at 50–52. The record, though, contains reports from many other treating and examining physicians who evaluated Heggarty's physical and mental conditions. *See* Tr. at 306–11 (reports of treating physician Thomas A. Ceplikas, M.D.); 312–16 (reports of treatment at The Psychological Center, Inc.); 317–21 (report of examining physician Hector F. Viloria, M.D.); 322–30 (report of examining physician Lincoln Pinsky, M.D.); 331–38 (report of Barbara C. Sheedy, Ph.D., a psychologist who interviewed Heggarty); 339–44 (report of examining physician Joel H. Epstein, M.D.). All of these reports were evaluated by the administrative law judge and contain substantial evidence to support the decision to deny him benefits. The absence of Dr. Bixby's report and that of the hospital where Dr. Bixby treated him does not, therefore, warrant remand of this case.

■ Fourth, Heggarty argues that the administrative law judge should have found him disabled as his eczema meets the standard for disability in listings 8.00 and 8.05 of 20 C.F.R. Part 404, Subpart P, Appendix 1.[8]

Judicial review of Social Security disability determinations is limited. This Court must affirm the Secretary's decision if it is supported by substantial evidence. 42 U.S.C. sec. 405(g). Under this standard, the Secretary's findings must be upheld if a reasonable mind, reviewing the evidence in the record as a whole, could accept them as adequate to support the decision. *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938); *Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 222 (1st Cir.1981).

Here, the Secretary's decision to deny Heggarty disability benefits is supported by substantial evidence. Although it is clear that Heggarty suffers from atopic dermatitis (also called eczema) which has caused extensive lesions on both his hands and feet, there is substantial evidence in the record which supports the conclusion that these lesions respond to treatment. Dr. Ceplikas, Heggarty's treating physician from March, 1978 to October, 1985, reported that, while Heggarty's condition was chronic, his eczema responded to treatment. Tr. at 306, 307. Similarly, examining physicians Hector F. Vilorio, M.D. and Joel H. Epstein, M.D. noted that Heggarty's eczema responded to treatment. *See* Tr. at 317, 319, 339.

Alternatively, the Secretary's decision to deny Heggarty disability benefits must be sustained on the basis that there is substantial evidence in the record to support the conclusion that Heggarty's eczema does not impose a marked limitation of function. Examining physician Dr. Viloria found that he had a full range of motion in his hands, wrists, elbows, ankles and knees. Tr. 318–19. Similarly, examining physician Dr. Pinshy noted only that Heggarty had a decreased range of motion in his left shoulder, an area where he does not suffer from eczema. Tr. at 323. Although treating physician Dr. Ceplikas reported that Heggarty has a twenty percent reduction in the movement of his hands during periods of swelling, the administrative law judge still could reasonably have found that Heggarty had nothing more than a minimal restriction of function when he considered the evidence in the record as a whole. For this reason, the Secretary's decision to deny Heggarty disability benefits on account of his eczema is supported by substantial evidence and must be upheld.

8. A claimant whose impairment equals or exceeds an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 will be found disabled unless he is working. 20 C.F.R. § 404.1520(d).

Listing 8.00 of 20 C.F.R. Part 404, Subpart P, Appendix 1 provides, in part, as follows:

*Skin lesions* may result in a marked, long-lasting impairment if they involve extensive body areas or critical areas such as the hands or feet and become resistant to treatment.

Listing 8.05 of 20 C.F.R. Part 404, Subpart P, Appendix 1 provides as follows:

8.05 *Psoriasis, atopic dermatitis, dyshidrosis.* With extensive lesions, including involvement of the hands or feet which impose a marked limitation of function and which are not responding to prescribed treatment.

Fifth, Heggarty argues that the administrative law judge did not analyze his allegations of pain and the effects of that pain on his ability to work in accordance with the requirements of *Avery v. Secretary of Health and Human Services*, 797 F.2d 19 (1st Cir.1986).

In *Avery*, the First Circuit interpreted the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, 98 Stat. 1794 (1984) (the "Act") and an instruction issued by the Secretary to require, first, that a claimant must establish that "a clinically determinable medical impairment [exists] that can reasonably be expected to produce the pain alleged." *Avery*, 797 F.2d at 21 (construing that part of the Act codified at 42 U.S.C. sec. 423[d][5] ). Second, the court held that the "statements of the claimant or his doctor, consistent with the medical findings, shall be part of the calculus." *Id.* The court noted that if this requirement is "to have any meaning, the statements of a claimant and his doctor must be additive to clinical or laboratory findings," so long as such statements "are not inconsistent with the objective findings." *Id.* (footnote omitted).

Under *Avery*, therefore, subjective statements of pain can be considered by the Secretary and can support a finding of pain more severe than would be expected given the objective medical findings, as long as these statements are not inconsistent with the objective findings.[9] The Secretary, however, still remains free to assess the claimant's credibility and discount the subjective statements of pain. *Id.* Whatever decision the Secretary makes concerning the believability of a claimant's subjective statements of pain, though, it must be supported by substantial evidence. *Da Rosa v. Secretary of Health and Human Services*, 803 F.2d 24, 26 (1st Cir.1986).

In the instant case, the administrative law judge discounted Heggarty's assertions as to the extent of his pain and concluded that his condition would not interfere with his ability to perform sedentary work. The administrative law judge based his finding on the medical evidence which showed that Heggarty's dermatitis was able to be controlled and limned his daily activities and his involvement in work efforts during the period of alleged disability. These are permissible reasons for discounting a claimant's subjective statements of pain under *Avery*. Since there is substantial evidence to support the finding of the administrative law judge in the record, the Secretary's decision to deny benefits to Heggarty does not run afoul of *Avery* and no remand is necessary.

Finally, Heggarty contends that the Secretary had to come forward with the testimony of a vocational expert before his claim for benefits could be denied. He argues that since he is unable to return to his prior work, the burden of proof has shifted to the Secretary and the Secretary is required to discharge that burden with expert vocational testimony pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e).

Once a claimant has demonstrated that a severe impairment prohibits him from performing any work he has done in the past, the Secretary has the burden of proving the existence of other jobs in the national economy capable of being performed by the claimant. *Ortiz v. Secretary of Health and Human Services*, 890 F.2d 520, 524 (1st Cir.1989). The Medical–Vocational Guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grid" or "Guidelines") were designed to enable the Secretary to satisfy this burden without resorting to "the live testimony of vocational experts" so as to "streamline" adjudication and "achieve greater uniformity in the tens of thousands of disability cases heard each year." *Sherwin v. Secretary of Health and Human Services*, 685 F.2d 1, 4

---

9. Statements of pain that are inconsistent with the objective medical findings cannot be accepted as decisive evidence of disability. *Avery v. Secretary of Health and Human Services*, 797 F.2d 19, 21 (1st Cir.1986). For example, a claimant's complaints of violent headaches could not be considered decisive evidence of disability if medical findings indicated that he only had pain in his lower extremities. *Id.*

(1st Cir.1982), *cert. denied,* 461 U.S. 958, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983).

The Secretary's medical-vocational guidelines, however, are not dispositive of the disability status of claimants whose strength limitations are also complicated by nonexertional impairments. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.-00(e) (1990). This is due to the fact that the guidelines assume that "the sole limitation on a claimant's ability to seek jobs in the national economy is lack of strength." *Gagnon v. Secretary of Health and Human Services,* 666 F.2d 662, 665 n. 6 (1st Cir.1981). When a claimant has nonexertional limitations, therefore, the Guidelines do not accurately reflect what jobs exist in the national economy which the claimant would be capable of performing. *Id.*

Where the medical-vocational guidelines are not dispositive on the issue of the claimant's disability status due to the existence of nonexertional limitations, the Secretary must carry his burden of proving the existence of jobs in the national economy which the claimant is capable of performing by other means. In this situation, "it is likely that the testimony of a vocational expert will typically be required." *Id.* at 666 n. 9.

The utilization of vocational expert testimony when the claimant has nonexertional limitations is not always required, however. When the claimant has non-strength impairments which only reduce the occupational base marginally, "the Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability." *Ortiz,* 890 F.2d at 524. Stated more generally, the smaller the reduction in the occupational base due to the non-exertional impairment, the more likely that the factual predicates underlying the Guidelines are applicable, and the need for the testimony of a vocational expert is correspondingly reduced.[10] *See id.* at 524–25.

 Although Heggarty suffers from nonexertional limitations, the fact that the administrative law judge did not utilize expert vocational testimony here does not require a remand under the circumstances of this case. In his opinion, the administrative law judge recognized that Heggarty was afflicted with non-strength impairments and that the Grid could not be applied to determine his disability status. The administrative law judge found, though, that Heggarty's nonexertional limitations did not significantly erode the occupational base available to him at the light and sedentary level of exertion. He noted that Heggarty was capable of holding a sedentary factory job, such as that found in the electronics industry, as this would not require him to be subject to irritants or have frequent contact with others. Thus, although it would have been preferable for the administrative law judge to utilize the testimony of a vocational expert in order to avoid the possibility of a remand, here the administrative law judge was justified in not doing so since the occupational base was reduced but marginally by Heggarty's non-strength impairments. No remand of this matter for the taking of expert vocational testimony is therefore necessary.

### III.

For all of the foregoing reasons, therefore, the decision of the Secretary denying benefits to the claimant is AFFIRMED.

SO ORDERED.

---

**10.** As the First Circuit has cautioned, however, an administrative law judge should typically utilize the testimony of a vocational expert in a disability hearing where the claimant has significant nonexertional limitations as this will "avoid needless agency rehearings." *Ortiz v. Secretary of Health and Human Services,* 890 F.2d 520, 528 (1st Cir.1989).