Jose CRUZ, Plaintiff,

v.

Otis R. BOWEN, Secretary of Health
and Human Services, Defendant.

Civ. A. No. 85–2850–C.

United States District Court,
D. Massachusetts.

Sept. 22, 1986.

Michael Raabe, Neighborhood Legal Services, Lynn, Mass., for plaintiff.

Frederick E. Dashiell, Asst. U.S. Atty., Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action in which the plaintiff, Jose Cruz, pursuant to 42 U.S.C. § 405(g), seeks an order reversing a final decision of the Secretary of Health and Human Services ("the Secretary") that denied his claim for disability insurance benefits. The matter is now before this Court on the plaintiff's motion for summary judgment and the defendant's motion for an order affirming the decision of the Secretary.

The plaintiff filed an application on March 14, 1984 for Supplemental Security Income benefits based on disability. The Social Security Administration ("SSA") denied the application both initially and on reconsideration. The plaintiff then appeared with his representative at a hearing before an administrative law judge ("ALJ"), who considered the case *de novo*. The ALJ denied the plaintiff's application for disability benefits on the grounds that plaintiff was not under a disability. The Appeals Council declined further review, rendering the ALJ's recommended decision the final decision of the Secretary, subject to judicial review. The plaintiff then filed the present action in this Court.

Under the standard of review established by the Act, the Secretary's findings, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). A court must uphold the findings if a reasonable mind, reviewing the record as a whole, could accept the evidence as adequate to support

the Secretary's conclusion. *Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 222 (1st Cir.1981). The issue in this case, therefore, is whether the Secretary's decision that the plaintiff was not disabled within the meaning of the Act is supported by substantial evidence.

The Social Security Act defines "disability" as the inability to engage in any substantial gainful activity due to any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). When evaluating a disability claim, the Social Security Administration ("SSA") applies sequentially the five-part test embodied in SSA regulations at 20 C.F.R. § 416.920 (1986). *See Goodermote v. Secretary of Health & Human Services*, 690 F.2d 5, 6–7 (1st Cir.1982).

The Secretary found, with respect to step one of the disability evaluation process, that the plaintiff was not engaged in substantial gainful activity. The Secretary further found that the medical evidence established that the plaintiff had lumbosacral syndrome, interstitial cystitis, and bronchial asthma. By proceeding in his analysis to step five—consideration of residual functional capacity—the Secretary implicitly found plaintiff's medical problems to constitute a severe impairment (step two) and that such severe impairment did not meet or equal a listed impairment in The Listings (step three). The ALJ explicitly found that the plaintiff is not capable of performing work he has done in the past (step four).

The basic issue in step five of the evaluation of disability is whether the plaintiff can, commensurate with age, education, and work experience, perform other work in the national economy. The Secretary found that plaintiff could perform "sedentary work" and thus was not disabled.

Plaintiff challenges the Secretary's decision on essentially three grounds. Plaintiff first argues that the finding that he is capable of "sedentary work" is not supported by substantial evidence. Second, plaintiff contends that the ALJ improperly evaluated plaintiff's subjective complaints of pain. Third, plaintiff asserts that the ALJ failed to consider and properly evaluate the combined effect of plaintiff's nonexertional and exertional impairments.

The ALJ found that plaintiff is capable of performing "sedentary work." The regulations state that in order to "determine the physical exertion requirements of work in the national economy, we [SSA] classify jobs as 'sedentary,' 'light,' medium,' 'heavy,' and 'very heavy,'...." 20 C.F.R. § 416.967. The ALJ examined plaintiff's exertional impairments, and concluded that the plaintiff is capable of sedentary work.

Although there is substantial evidence to support the ALJ's finding that plaintiff is capable of meeting the exertional requirements for "sedentary work" as that term is defined in the Act and regulations, the Secretary's decision that plaintiff is not disabled failed to properly consider the effect of plaintiff's nonexertional limitations.

The plaintiff was born October 15, 1939 in Puerto Rico. From 1974 to 1978 he worked in the receiving and shipping department at the General Electric Company in Lynn, Massachusetts. In October 1978 he injured his back at work while doing lifting. He was hospitalized due to spondylolisthesis from October 8 to October 16, 1979 during which time he underwent bilateral lateral spinal fusion. Dr. Kaplan performed the back surgery, and continued to be the plaintiff's treating physician.

Dr. Kaplan, who evaluated plaintiff's back condition on March 19, 1984, September 24, 1984, and January 4, 1985, diagnosed the plaintiff's condition as lumbosacral syndrome. Dr. Kaplan stated that plaintiff is "totally disabled" by lumbosacral syndrome; that he was restricted to a work environment that would not require any lifting, climbing, stooping, bending, sitting, or standing for any length of time; that he cannot use his hands/arms or foot/legs for repetitive exertion; and that he can stand, sit, or walk for zero hours in an 8 hour work day.

Dr. B.D. Gupta performed a consultive examination on April 2, 1984. Dr. Gupta reported that the plaintiff was able to bend and stoop with some discomfort in the back and that he occasionally gets pain on prolonged sitting or walking. Pain is relieved by medication, Dr. Gupta noted, and there was no evidence of paravertebral spasm. The plaintiff performed straight leg raising to 100 degrees bilaterally. Examination of the musculoskeletal system revealed tenderness over the L3–4–5 level with flexion performed to 80 degrees and extension to 20 degrees. Neurological evaluation demonstrated no evidence of nerve root compression.

An orthopedic report dated June 1, 1984 stated that plaintiff was capable of forward flexion of the lumbar spine from zero to 45 degrees at which point plaintiff complained of low back pain. Plaintiff performed straight leg raising at 40 degrees on the right and 50 degrees on the left. Knee and ankle reflexes were within normal limits. There was a mild to moderate degree of tenderness in the lower back involving the lower half of the lumbar spine. The report states that plaintiff was unable to perform his specific past relevant work in shipping and receiving.

At the hearing before the ALJ on November 7, 1985, plaintiff testified that he would drive a friend's car occasionally— "maybe once a month"—and would use public transportation once a week to go downtown to get a paper. Plaintiff testified that on an average day he would watch TV a lot and read the paper. Plaintiff testified that he can sit for 30–45 minutes and stand for 10 minutes before getting back pain. Plaintiff further testified that he can get outside and walk for the length of a block.

The plaintiff has also been diagnosed as having chronic bronchial asthma. Plaintiff has had numerous visits to the Lynn Hospital Emergency Room with respiratory difficulties. Dr. Jacob R. Karas examined plaintiff on May 24, 1982 due to complaint of moderate dyspnea on exertion and wheezing. Dr. Karas reported that pulmonary function studies performed in January 1980 revealed plaintiff to have severe airway obstruction with considerable improvement after the administration of bronchodilators. Dr. Karas recommended medication. Dr. Karas examined the plaintiff again in July 1982, and noted marked diminution in his pulmonary symptoms while on medication. Physical examination revealed the lungs to be much clearer with forced expiratory wheezes only. In August 1982 the plaintiff indicated he experienced mild dyspnea and wheezing in the morning and during the day. A March 1984 examination of the plaintiff's lungs revealed coarse expiratory rhonci only. The heart had a normal sinus rhythm and there was no evidence of edema in the extremeties.

Dr. Gupta examined the plaintiff as to his asthma in April 1984. The lungs were clear and the heart had a regular rhythm. Examination of the extremeties revealed no cynosis, clubbing or edema. The claimant underwent pulmonary function studies, but was uncooperative during this examination, and thus reliable date could not be obtained.

■ There is substantial evidence to support the ALJ's finding that the multiple impairment of lumbosacral syndrome and bronchial asthma—both separately and as combined, multiple impairments—do not preclude plaintiff from being able to meet the physical, exertional requirements of "sedentary work." As to plaintiff's lumbosacral syndrome, Dr. Kaplan's statement that plaintiff is "totally disabled" is not controlling, that decision being the responsibility of the Secretary. *Sitar v. Schweiker*, 671 F.2d 19, 22 (1st Cir.1982). Dr. Gupta's report and the orthopedic report dated June 1, 1984, provide evidence contrary to Dr. Kaplan's report. Where there is conflicting evidence, the Secretary is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony and to determine the case accordingly. *Id.* The findings of the Secretary are conclusive if supported by substantial evidence and should be upheld even in those cases in which the reviewing court,

had it heard the same evidence *de novo*, might have found otherwise. *Gonzalez v. Richardson*, 455 F.2d 953, 954 (1st Cir. 1972). In the present case there is substantial evidence that plaintiff's conditions of lumbosacral syndrome and bronchial asthma do not preclude plaintiff from performing sedentary work.

This Court also find substantial evidence to support the Secretary's finding that plaintiff's pain is not so severe as to be disabling or preclude performance of sedentary work. Although plaintiff argues that he suffers disabling pain, the Secretary need not accept a claimant's subjective assertion of pain. *Miranda v. Secretary of Health, Education, and Welfare*, 514 F.2d 996, 1000 (1st Cir.1975). The Secretary satisfied his duty of evaluating the testimony regarding pain by implicitly discrediting the degree of pain claimed by plaintiff, when the ALJ stated that the hearing testimony as to subjective symptoms did not establish an impairment so severe that the plaintiff could not perform sedentary work. *See Acevedo Ramirez v. Secretary of Health, Education and Welfare*, 550 F.2d 1286, 1286–87 (1st Cir.1977). This finding is supported by substantial evidence. The medical reports indicate plaintiff able to perform straight leg raising from 40 to 60 degrees. Plaintiff's subjective complaints of pain to Dr. Gupta were limited: plaintiff "occasionally" had pain on "prolonged sitting or prolonged walking." Dr. Gupta reported that the pain is relieved by medication. The Secretary's finding that the degree of pain affecting plaintiff is not disabling and does not preclude plaintiff from performing sedentary activity is supported by substantial evidence.

In finding that plaintiff is not disabled, however, the ALJ misapplied the Medical-Vocational Guidelines, 20 C.F.R. § 404, Subpart P, Appendix 2 ("Guidelines"). The ALJ correctly stated that if an individual suffers from a nonexertional impairment as well as an exertional impairment, and if a finding of disability cannot be made on strength limitations alone, the rules established in the Guidelines are not controlling, but instead serve as a framework for evaluating disability. The ALJ found that plaintiff is a "younger person," has a "marginal education" and is able to communicate in English, past work experience was "unskilled" and did not impart to him transferable skills, and that he has a residual functional capacity for "sedentary work." The ALJ then applied rule 201.18 of the Guidelines, to find that plaintiff is not disabled. In his opinion, the ALJ stated,

> Accordingly, Rule 201.18, Table No. 1 of Appendix 2, Subpart P of Regulation No. 4 is applicable. Regulation 416.969 provides that when the findings of fact made as to all factors coincide exactly with the criteria of a rule, that rule directs a conclusion of 'disabled' or 'not disabled' as specified in the rule. Hence, the claimant must be found 'not disabled.'

(Tr. 11). Because plaintiff is limited by nonexertional as well as exertional limitations, the ALJ's reliance on the Guidelines was error.

The SSA regulations, in 20 C.F.R. § 404, Subpart P, Appendix 2, § 200.00(e), indicate that the Guidelines are not dispositive of the status of persons whose exertional limitations are further complicated by other nonexertional impairments. This regulation states in part that,

> (e) Since the rules are predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs, they may not be fully applicable where the nature of an individual's impairment does not result in such limitations, e.g., certain mental, sensory, or skin impairments. In addition, some impairments may result solely in postural and manipulative limitations or environmental restrictions. Environmental restrictions are those restrictions which result in inability to tolerate some physical feature(s) of work settings that occur in certain industries or types of work, e.g., an inability to tolerate dust or fumes.

The United States Court of Appeals for the First Circuit explained this limitation on the use of the Guidelines in *Gagnon v. Secretary of Health and Human Services,* 666 F.2d 662, 665 n. 6 (1st Cir.1981), stating,

the rationale for this exception to the full, automatic application of the Medical-Vocational Guidelines appears to be simple. The Guidelines apparently assume that the sole limitation on a claimant's ability to seek jobs in the national economy is lack of strength, given the claimant's age, education, and prior work experience. Where a claimant has non-strength limitations, therefore, the Guidelines do not accurately reflect what jobs would or would not be available.

Where a finding of disabled is not possible on the basis of strength limitations alone, the regulations state that the Guidelines

provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations. Also, in these combinations of nonexertional and exertional limitations which cannot be wholly determined under the rules in this Appendix 2, full consideration must be given to all of the relevant facts....

20 C.F.R. § 404, Subpart P, Appendix 2 § 200.00(e)(2)(1986).

Consequently, the ALJ must determine whether a claimant's nonexertional disabilities are significant enough to limit his access to the full range of jobs assumed to require "sedentary" work strength capabilities. *Gagnon,* 666 F.2d at 666 n. 8; *Burgos Lopez v. Secretary of Health and Human Services,* 747 F.2d 37, 41 (1st Cir. 1984); *Sryock v. Heckler,* 764 F.2d 834, 836 (11th Cir.1985). In the instant case, the ALJ found that

Neither the objective medical evidence nor the testimony at the hearing as to the claimant's subjective symptoms establishes that his ability to function has been so severely impaired as to have precluded him from being able to engage in sedentary work activity for a continu-ous period of not less than twelve months.

In addition, the ALJ found that "the evidence further supports a finding that the claimant has the maximum sustained work capacity to perform sedentary work which would not preclude him from voiding as necessary."

The ALJ's findings that plaintiff's nonexertional limitations do not further diminish plaintiff's work capability are not supported by substantial evidence.

The ALJ finds that plaintiff has interstitial cystitis, a urinary condition for which he underwent cystoscopy, irritation of the bladder, fulguration of Hunner's ulcers and calabration of the urethera as an inpatient at Lynn Hospital in July 1982. Plaintiff underwent surgery again on March 5, 1984 to increase his capacity. Dr. Kelly evaluated plaintiff's interstitial cystitis in a report dated March 19, 1984, indicating that with regard to ability to work the plaintiff had to be free to void every hour at work and that he must not be limited to an area where he cannot leave for transient periods in order to void. A report dated April 19, 1984 indicated that plaintiff had improved to the point that it was only necessary for him to void every two hours. Plaintiff was again hospitalized for seven days in August 1984, however. Plaintiff's complaints regarding his interstitial cystitis are pain on urination and urgency of frequent urination. At the hearing before the ALJ, plaintiff testified that he was taking four pills every day for his urinary condition, that the medication made him dizzy, and that he has to pass water about every hour.

The ALJ stated that, "[t]he evidence further supports a finding that the claimant has the maximum sustained work capacity to perform sedentary work which would not preclude him from voiding as necessary." The ALJ lacks substantial evidence to conclude that plaintiff's interstitial cystitis will enable him to perform the full range of sedentary work. Thus, the ALJ failed to adequately consider this nonexertional impairment along with plaintiff's ex-

ertional impairments when determining disability.

Similarly, there is uncontradicted evidence that plaintiff has numerous allergies which cause plaintiff to get wheezy and out of breath and that he should not be exposed to working conditions which present unprotected heights, moving machinery, noise and vibration, extreme temperatures, or dust, fumes and gases. All of these factors could well limit the number of jobs within the "sedentary work" category which the plaintiff might be able to perform. *See Dellolio v. Heckler*, 705 F.2d 123, 127–28 (5th Cir.1983); *Allen v. Secretary of Health and Human Services*, 726 F.2d 1470, 1472–73 (9th Cir.1984). Where claimant presents a prima facie case of disability, i.e., that he cannot engage in previous type of employment, it is the Secretary's responsibility to establish that the claimant can engage in alternate employment and that such employment exists. *Geoffroy v. Secretary of Health and Human Services*, 663 F.2d 315, 317 (1st Cir. 1981). As explained above, the Secretary's reliance on the Guidelines to carry its burden in this case was error. Accordingly, this case should be reversed and remanded for further agency proceedings to determine whether plaintiff's nonexertional impairments stand in the way of even sedentary employment. Such a proceeding might involve further and more specific expert evidence concerning plaintiff's ability to function in the workplace, coupled with a vocational expert's testimony as to the availability of jobs in the national economy which someone possessing plaintiff's peculiar mix of exertional and nonexertional limitations might fill. *See Burgos Lopez*, 747 F.2d at 42; *Gagnon*, 666 F.2d at 665 n. 6, 666 n. 9.

Order accordingly.

## ORDER

In accordance with memorandum filed this date, it is ORDERED:

1. Plaintiff's motion for summary judgment is denied.

2. Defendant's motion for an order affirming the decision of the Secretary is allowed in part and denied in part.

3. Case is remanded for further agency proceedings consistent with memorandum filed herewith.