989 F.2d 484
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Bienvenido GONZALEZ-GARCIA, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 92-2088.
 United States Court of Appeals,
First Circuit.
 March 17, 1993
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO
 Raymond Rivera Esteves and Juan A. Hernandez Rivera on brief for appellant.
 Daniel F. Lopez Romo, United States Attorney, Jose Vazquez Garcia, Assistant U.S. Attorney, and Paul Germanotta, Assistant Regional Counsel, Dept. of Health & Human Services, on brief for appellee.
 D.Puerto Rico.
 AFFIRMED.
 Before Selya, Cyr and Boudin, Circuit Judges.
 Per Curiam.
 
 
 1
 Claimant Bienvenido Gonzalez Garcia applied for Social Security disability benefits on May 24, 1989. He alleged an onset date of April 15, 1988 and claimed that he had a back condition and a mental impairment. After holding a hearing, an administrative law judge (ALJ) found that claimant was not entitled to disability benefits. The Appeals Council denied claimant's request for review. The district court affirmed the Secretary's decision and this appeal ensued.
 
 I.
 
 2
 Claimant was injured at work when he tried to lift a steel beam. He sought treatment at the State Insurance Fund (SIF) for back pain. According to claimant, he was given a course of physical therapy which left him feeling worse. At some point, he tried to resume work but could not because of the pain. All of his past jobs involved heavy lifting with frequent bending and stooping. Since his injury, claimant states that he cannot sit, stand or walk for any length of time and he is constantly changing position. He cannot bend or stoop. He cannot lift objects weighing more than five pounds.
 
 
 3
 As for his daily activities, claimant testified that he could not take care of his personal needs; his wife helps him to bathe and dress. He does not leave the house except to visit his father. Sometimes he watches television or listens to the radio. He cannot help with household chores and does not drive. During the day, he sits or stands on the balcony; he never walks.
 
 
 4
 Claimant described his pain as constant; it starts in his lower back and spreads to his buttocks, thighs, legs and feet. He also complained of "palpitations" in his bones. He does not sleep well due to the pain and cramps in his legs. In addition to his back pain, he suffers from headaches and nosebleeds. He takes medication which relieves the pain for about two hours.
 
 
 5
 Claimant also takes medication for a dysthymic disorder. He stated that he hears voices calling his name and sees shadows. He is irritable and noises bother him. He has problems relating to people and prefers to be alone. He has received sporadic therapy for this impairment at the local mental health center.
 
 II.
 
 6
 The ALJ determined that claimant has a possible herniated disc at L5-S1, back pain and an affective disorder which alone or in combination did not meet the listings. He credited claimant's allegations of pain to the extent that claimant was precluded from engaging in strenuous work-related activities. Nonetheless, the ALJ found that claimant retained the residual functional capacity (RFC) to perform the exertional requirements of work except to the extent that claimant could not lift over ten pounds. Also, he could not sit, stand or walk for over one hour at a time; however, claimant could perform each of these activities for up to six hours per eight-hour workday. He could stoop and kneel only occasionally. Aside from these limits, claimant retained the capacity to perform the full range of sedentary work.
 
 
 7
 The ALJ determined that Rule 201.25 of Table 1 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpt. P, App. 2 (1992) (the "Grid"), would direct a finding of "not disabled" for a person such as claimant-a younger individual with a limited education (7th grade) and no transferable work skills. Because claimant's capacity for the full range of sedentary work had not been "significantly compromised" by his nonexertional limits, the ALJ used Rule 201.25 as a framework to conclude that claimant was not disabled. In so finding, the ALJ stated that claimant's mental impairment did not impose "more than slight limitations in those areas considered relevant to the capacity to perform work-related activities."
 
 III.
 
 8
 On appeal, claimant essentially argues that his back condition prevents him from engaging in even sedentary work. He also avers that the ALJ erred in applying the Grid on the ground that his nonexertional impairments-pain and his emotional condition-significantly limit his ability to perform the full range of sedentary work. We address these issues separately.
 
 A. Back Condition
 
 9
 The record contains conflicting evidence concerning the effect of claimant's back problem on his physical capabilities. X-ray results showed a 20 to 25 percent narrowing of the disc space at L5-S1, suggestive of a bulging or herniated disc. Also, a C-T scan revealed a possible bulging or herniated disc at L4-L5 with a slight swelling of the left nerve root.
 
 
 10
 Over the course of his treatment at the State Insurance Fund, claimant's condition varied. For example, on September 30 and October 13, 1988, claimant exhibited persistent lumbar muscle spasm and limited range of motion. However, a November 2, 1988 special medical report stated that claimant's back was well and there was no muscle spasm. In addition, claimant's range of motion was normal and there were no neurological deficits. The report concluded that claimant could perform light work and should be referred to vocational rehabilitation. Although claimant exhibited marked limitation in the movement of his trunk on November 7, 1988, there still was no significant muscle spasm and claimant could walk without difficulty. When claimant was discharged from the SIF in April 1989, he had residuals consisting of slight spasm of the para-vertebral muscles with slight limitation of movement of the trunk in all directions. Claimant refused a referral to vocational rehabilitation.
 
 
 11
 A neurological evaluation performed in July 1989 revealed no evidence of paravertebral muscle spasms or motor atrophy; there was normal strength in all muscles and no motor reflex or sensory disturbances. Claimant's gait and posture were normal. He refused to bend his spine. In January 1990, claimant was again examined by a consulting neurologist. At this time, claimant could not walk on his heels or toes, exhibited some weakness of the left toe and had spasm in his paravertebral muscles. His range of motion was limited.[1]
 
 
 12
 A nonexamining physician completed an RFC form in August 1989. This form reveals that claimant can frequently lift and carry up to ten pounds and occasionally can lift and carry twenty pounds. He can only occasionally stoop and crawl. His disc pathology limits his ability to use his lower extremities to push and pull. However, he can sit, stand and walk for up to six hours per work day.
 
 
 13
 The medical findings outlined above amply support the conclusion that claimant retained the ability to meet the exertional demands of sedentary work. Muscle spasm and limits in range of motion were not consistently present. Further, claimant rarely exhibited any neurological or motor deficits. Finally, the RFC assessment indicates that claimant's disc problems would not prevent him from working at the sedentary level. Because "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion," we must uphold the Secretary's factual determinations. Rodriguez v. Secretary of Health and Human Services, 647 F.2d 218, 222 (1st Cir. 1981).
 
 B. Nonexertional Impairments
 
 14
 Next, claimant alleges that the ALJ did not properly credit his complaints of totally disabling pain. We agree that there exists an objective medical impairment-bulging or herniated discs at L4-L5 and L5-S1-that can reasonably be expected to cause pain. See Avery v. Secretary of Health and Human Services, 797 F.2d 19 (1st Cir. 1986). Nonetheless, as described above, the dearth of evidence of motor, sensory or strength deficits conflicts with the level of pain claimant alleges. Further, claimant testified that medication relieved the pain for up to two hours. Because the ALJ diligently considered the factors outlined in Avery, we find that his decision concerning the level of claimant's pain is supported by substantial record evidence and did not preclude reliance on the Grid.[2]
 
 
 15
 Claimant's mental impairment presents a closer question. Absent significant nonexertional limitations, the Grid provides a "streamlined" method by which the Secretary can sustain his burden of proof at step five of the sequential evaluation process. Ortiz v. Secretary of Health and Human Services, 890 F.2d 520, 524 (1st Cir. 1989) (per curiam); Sherwin v. Secretary of Health and Human Services, 685 F.2d 1, 2 (1st Cir. 1982), cert. denied, 461 U.S. 958 (1983). However, where a claimant has a nonexertional impairment in addition to an exertional limit, the Grid may not accurately reflect the availability of jobs such a claimant could perform. Ortiz, 890 F.2d at 524; Gagnon v. Secretary of Health and Human Services, 666 F.2d 662, 665 n.6 (1st Cir. 1981).
 
 
 16
 The decision to rely on the Grid in this situation depends upon whether claimant's mental impairment "significantly affects [his] ability to perform the full range of jobs" at the sedentary level. See Lugo v. Secretary of Health and Human Services, 794 F.2d 14, 17 (1st Cir. 1986) (per curiam); Ortiz, 890 F.2d at 524. If the occupational base is significantly limited by this impairment, the Secretary erred in using the Grid to carry his burden at step five. See Ortiz, 890 F.2d at 524. In such a case, the testimony of a vocational expert generally would have been required. Id.
 
 
 17
 Here, the ALJ essentially determined that claimant's emotional condition was not severe and thus, did not impinge on claimant's ability to engage in the full range of sedentary, unskilled work. There are two distinct sets of mental capabilities which are required for the performance of unskilled work. Id. at 526; Social Security Ruling (SSR) 85-15. These are (1) the intellectual ability to perform such work and (2) the ability to cope with the demands of the work environment per se. Id.
 
 
 18
 As for the first category-the ability to carry out simple instructions, respond to supervision and cope with coworkers-we believe that there is sufficient evidence to support the ALJ's conclusion that claimant's dysthymic disorder did not significantly impair his functioning. A consultative examination performed by a psychiatrist in May 1990 indicates that claimant was coherent, relevant, in contact with reality and completely oriented. His thought processes were organized and there was no evidence of delusions or hallucinations. His memory was intact. Although his attention, concentration and retention were "slightly diminished," claimant's judgment and reasoning were not impaired. The psychiatrist diagnosed a mild dysthymic disorder; claimant's prognosis was fair.
 
 
 19
 This psychiatrist also completed a mental RFC assessment. He indicated that claimant's abilities to maintain attention and to understand, remember and carry out both complex and detailed job instructions were good. His capacity to deal with simple instructions was unlimited. He also was rated as having good abilities in the areas of using judgment, interacting with supervisors, relating to coworkers and functioning independently.
 
 
 20
 The second category includes the ability to remain in the workplace the entire day and to attend work regularly and punctually. In this area, claimant was rated as being capable of demonstrating responsibility, relating predictably in social situations and behaving in an emotionally stable manner. However, his ability to deal with "work stress" was only fair. Fair is defined on the RFC form as "seriously limited but not precluded."
 
 
 21
 Given the evidence anent claimant's limited capacity to deal with "work stress," his mental impairment might well be deemed of some severity.[3] But, we believe that the ALJ's reliance on the Grid in this particular situation was nevertheless appropriate (although by no means inevitable). See Ortiz, 890 F.2d at 524 (explaining that claimant's mental impairment, even if severe, is not considered disabling unless it has eroded the occupational base for the full range of sedentary, unskilled work). Aside from the finding that claimant was seriously limited in his capacity to confront the stress of work in general, the examining psychiatrist concluded that claimant's abilities in the more specific areas of dealing with the work environment-maintaining concentration, being reliable, behaving in an emotionally stable manner and accepting supervision-were good. Also significant is the fact that claimant's situation does not place him anywhere near the dividing line between disabled and not disabled under Table 1 of the Grid. See id. at 527-28.
 
 
 22
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 [1]
 Neither of these physicians filled out RFC assessments despite the requirement in the regulations that a complete consultative examination should include such findings. See 20 C.F.R. § 404.1519n(c)(6)
 
 
 [2]
 We also note that claimant's limitations in stooping and crawling-nonexertional impairments-do not significantly limit his access to the full range of sedentary work. See Social Security Ruling 85-15 (to meet requirements of sedentary work, an individual would need to stoop only occasionally and would rarely be required to crawl); cf. Frustaglia v. Secretary of Health and Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (per curiam)
 
 
 [3]
 An impairment is not severe only when it has no more than "a minimal effect on the person's ... mental ability ... to perform basic work activities." SSR 85-28